IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

EAA
JUL 24 2015
7-24-15
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States of America ex rel.
Michael W. O'Connor
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

Mr. Tom Dart, Director of C.C.D.O.C.
(Warden, Superintendent, or authorized person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment attacked imposes a sentence to commence in the future)**

ATTORNEY GENERAL OF THE STATE OF

______________________
(State where judgment entered)

15cv6494
Judge Sharoon Johnson Coleman
Magistrate Judge Young B. Kim
PC10

12CR-12678

Case Number of State Court Conviction:
14CR8935 –
12OP50369

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered: 5th Circuit Court, Bridgeview, IL

2. Date of judgment of conviction: 2/13/2013

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
Cyberstalking

4. Sentence(s) imposed: 30 months Probation

5. What was your plea? (Check one)
(A) Not guilty (X) 3/2013
(B) Guilty (X) 2/2013
(C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:
Michael revoked his guilty plea, in March 2013

Reviewed: 8/2013

**PART I – TRIAL AND DIRECT REVIEW**

1. Kind of trial: (Check one): Jury ( ) Judge only (X)
2. Did you testify at trial? YES ( ) NO (X)
3. Did you appeal from the conviction or the sentence imposed? YES (X) NO ( )

(A) If you appealed, give the

(1) Name of court: Appellate Court of Illinois

(2) Result: No result (Rejection of Appeal, by Honorable Judge J. Reyes, Clerk Mr. Rasid and Appellate Public Defender A. Goldberg)

(3) Date of ruling: 9/2014 / 6/2015

(4) Issues raised: • Ineffecient Defense Counsel
• Inability of defendant to plea anything, due to lack of medication for his mental health condition (disability)
• due, also, to having been assaulted, threatened, and forced into wrongful conviction

(B) If you did not appeal, explain briefly why not:

4. Did you appeal, or seek leave to appeal, to the highest state court? YES ( ) NO (X)

( ) If yes, give the

(1) Result:

(2) Date of ruling:

(3) Issues raised:

(B) If no, why not: We were prevented from appealing to the highest court. (See Att. III)

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (X)

If yes, give (A) date of petition: ____________ (B) date *certiorari* was denied: ____________

**PART II – COLLATERAL PROCEEDINGS**

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES ( ) NO (X)

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: ____________________

   B. Date of filing: ____________________

   C. Issues raised: ____________________

   D. Did you receive an evidentiary hearing on your petition? YES ( ) NO (X)

   E. What was the court's ruling? The Court ignored our Motions

   F. Date of court's ruling: last ruling: 10/17/2014

   G. Did you appeal from the ruling on your petition? YES ( ) NO (X)

   H. (a) If yes, (1) what was the result? ____________________

   (2) date of decision: ____________________

   (b) If no, explain briefly why not: According to the attached Bridgeview Court Transcript Judge Hynes -, of 10/17/2014, I was afraid to appeal, since I was threatened to be held in contempt if I file another motion. Att. I

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES ( ) NO (X)

   (a) If yes, (1) what was the result? ____________________

   (2) date of decision: ____________________

   (b) If no, explain briefly why not: I did not know that I may appeal to the highest state court, initially, since I was threatened. When I found out that I may appeal, I tried to appeal, but I was sent back to the Bridgeview Court, to ask the clerk to send the Court transcripts to the Appeal Court. The clerk told me that Judge Hynes does not allow my Court Transcripts to be sent to the Appeal Court. Then, I filed a motion to the attention of Judge Hynes to explain the reasons of the appeal. On 10/17/2014, Judge Hynes (Att. I) threatened to send me to jail for an indefinite amount of time, if I file "one more motion" I was very afraid.

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus? YES ( ) NO (X)

If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

1. Nature of proceeding ____________
2. Date petition filed ____________
3. Ruling on the petition ____________
4. Date of ruling ____________
5. If you appealed, what was the ruling on appeal? ____________
6. Date of ruling on appeal ____________
7. If there was a further appeal, what was the ruling ? ____________
8. Date of ruling on appeal ____________

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? YES ( ) NO (X)

A. If yes, give name of court, case title and case number: ____________

B. Did the court rule on your petition? If so, state

(1) Ruling: ____________

(2) Date: ____________

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition? YES (X) NO ( )

If yes, explain: • In Bridgeview Court – Courtroom 110 – there are legal proceedings pending, with respect to this conviction, for a violation of Probation, According to Defense Counsel, Probation was supposed to end in March, 2015 (3/2015) – see Attachment IV.

• Also, due to his Revengeful entrapment and to his mental illness being constantly manipulated and criminalized, Petitioner was charged with four more "cyberstalking" and "aggravated stalking" and "intimidation of witness/rep", No Bond Charges, still pending (without TRIAL) in the Leighton Criminal Court Room 206. Also, the Sheriffs who assaulted Petitioner (5/09/2014) charged Petitioner with Battery – BRANCH 43 - pending)

Ground One:

**Petitioner's Life Is in Imminent Danger**

Supporting Facts:

Petitioner Has "Excessive Anxiety", PTSD, TBI, Suicidal Ideation, Untreated Head Concussions, Dislocated Vertebrae, Deafness in One Ear, Blurred Vision, Damaged Knee, Teeth, and Maxillary, is in constant pain, shaking uncontrollably, and he needs a wheel chair, due to repeated assaults in CCDOC, to the lack of medical care, and constant denial of his Due Process rights.In order to stay alive, petitioner needs urgent and appropriate medical and neurological care (see Att. III). Petitioner was 21 years old, a senior student at DePaul, when, on 6/14/2012, he was arrested, illegally(see attachment I), for, allegedly, having texted, between 6/06 and 6/10/2012, a girl who, unknowingly, placed a Temporary No Contact Order against him, on 6/11/2012. Cook County jail refused to allow him his medication, petitioner suffered a seizure and was physically injured.His family bonded him out, he was treated, and returned to his senior classes at DePaul. In revenge for having resumed his life and career, the malicious prosecution worked with petitioner's defense attorney, who had access to petitioner's DePaul records, with officers from DePaul police campus, with DePaul professor whose husband is a police officer at Orland Park, and with the victim, harassing petitioner, especially after petitioner responded to their slandering allegations by sending to his defense attorney(unaware of the conspiracy) proofs of the victim's plagiarism off petitioner's papers, and naked or semi naked pictures of herself that the victim had texted him.Approximately two days before the Vice President of Students'Affairs'meeting where petitioner was going to present proofs of the victim misconduct, Petitioner was re-arrested for some taken out of context, Craiglist postings. The revengeful prosecution declared petitioner, "a danger to society" and, because "she got mad"(defense attorney's and the sheriff's words) at petitioner's mother who called the DA office to inform them that the petitioner is mentally ill, she sent petitioner to the Maximum Security CCDOC, with felons of type X and XI felonies, who did not believe that petitioner "just wrote" to a victim, but they sought to harm him because they thought he is lying about his felony, which was VSP. In addition to the dangers of being killed, petitioner was, again, denied his needed medications for 22 days, and, when petitioner's mother explained to the sergeant, on 11/04/2012, that petitioner became symptomatic and suicidal, the sergeant, who worked together with those who conspired to kill the petitioner,transferred petitioner to the Criminally Insane ward, placing petitioner in a cell with a gang member who was going to shank the petitioner. Since the petitioner kept begging to be protected from being killed, the following day, the same Orland Park police detectives who sent petitioner to jail in June, 2012, re-arrested petitioner, on 11/06/2012, transported him with the Top Crime Suburban squad to their police station, where they tortured and interrogated the petitioner, who, due to the lack of medication was already psychotic, and charged petitioner with more double jeopardy cyberstalking charges(having caused distress and having cause fear).Together with the revengeful prosecution, and her friends, petitioner was arraigned, on 12/20/2012, for other cyberstalking charges of June, 2012. Petitioner was returned, by the Orland Park office, to the Criminally Insane ward, where his cellmate was waiting "to kill" him, since he has been informed that petitioner was taken out to "rat" on him. The following day, on 11/10/2012, petitioner was assaulted and sexually molested by this cellmate. Petitioner was completely unable to defend himself, due to 4mg Clonapin that he just started to be prescribed. Despite petitioner's desperate cries for help, the attacker banged petitioner's head on the floor for 20 minutes, bit his neck(to separate his head from his

body), and sexually molested petitioner. Petitioner suffered head concussions, TBI, PTSD, he was not able to open his mouth for three days, and, even after four weeks(defense attorney advised petitioner's mother to not visit him sooner, due to possible nervous break down),when she visited him, petitioner's mother was unable to recognize her son's facial features. Extremely traumatized, and following defense counsel's inefficient legal advise, petitioner pleaded guilty to criminal charges of cyberstalking, in order to access medical help, but he revoked his guilty plea three weeks later, when he was advised by a pro bono lawyer of the inefficiency of his defense attorney's counsel,who, in addition to the fees his mother paid him, took petitioner's bond money, without informing petitioner's mother, and after three court appearance,deserted him. On 10/17/2013,petitioner filed a Civil Complaint for violation of his civil rights by the Orland Park police and by the Cook County Jail.Immediately after, the Orland Park police, who had routed the victim's phone to their police station, the victim, and their friends, started an intense campaign "to get" the petitioner and to"get the mother" of the petitioner, also. Numerous postings, and enticing ("when I saw you in Court...","call me without hesitation", "it was not me who hurt you, but someone snooped through my things", "I love you and I miss you so much", etc. - e-mails and social media postings from the victim(and/or her friends, impersonating her) ensued. After 15 months of painful avoidance, petitioner responded with love poems and postings in Facebook. He was immediately re-arrested by the CPD, due to a "detective alert" placed by the Orland Park police, and kept without medication, for four days in the basement of our CPD District 22. Although petitioner's mother, immediately after his arrest, on 5/06,turned in the petitioner's medications, explaining to the CPD officers that petitioner needs his medication to survive, they refused to medicate him, and, on 5/09/2014, in the Bond Court, when prosecutor was reading three more cyberstalking charges against him, petitioner, who was symptomatically sick, said, "No, no, no", and was left-for-dead, by being hit in the head, face(broken nose), handcuffed and dragged-in front of the entire Court -, then, in the Bond Court back hallway, he was beaten-to be-killed, by being kicked in the face, head, back, and groin, by four sheriffs, who kicked petitioner in the head, face, back and groin, spitting swearing and threatening to kill him, while six officers watched. Petitioner was left unconscious, in blunt trauma, not breathing and had to be resuscitated twice(while the police refused to allow the ERdoctors to unshackle, free the handcuffs and the body guard attached to his body)shackled,at the Mount Sinai ER Hospital.Two police officers posted in front of his hospital room denied petitioner to contact his family "for 48 days" because, they said, "you don't want them to see you like this".Due to the extreme hate against him ("they just hate Michael") and to the concealment of conspiracy to turn him into a felon, for 419 days still in CCDOC,petitioner continues to be denied his due process jury trial, and his urgently needed treatment for the extensive neurological damage that he suffered during his 5/09/2014 Bond Court assault (see attachments II and III).

Ground Two:

**Petitioner was told and had to promise that he will not hold anyone responsible if he will be killed, due to his filing a civil complaint for his 5/09/2014 assault in the Bond Court.**

Supporting Facts:

For more than one year of incarceration, petitioner was not allowed at least x-rays for his head concussions. He was told that there are no records to show that he was ever assaulted. Petitioner is constantly threatened, hurt, provoked-to-react by some Cook County guards – who allied with the sheriffs who left petitioner for dead, on 5/09/2014 Bond Court assault -, and who continue to place petitioner in Maximum Security solitary confinement (August, 2014, May 2015) with "killers" cellmates, in 23 hrs. confinment, with dark muddy water to drink, fescies on the floor, thus continuing to damage petitioner's physical, mental, and neurological condition.

Ground Three:

**Excessive/Oppressive Bond Endangers Petitioner by Raising Inmates' and Guards' Suspicions of Petitioner's Criminality, and Prevents Petitioner From His Needed Medical Treatment, Due Process Rights, and from Being Allowed to Therapy, Social Work and Employment Services, While in Cook County Jail(Four No Bond Charges, and two charges of over $1,350,000 Bond**

Supporting Facts:

Petitioner was charged with "color of law" crimes and with frivolous charges(based on an unconstitutional Probable Cause of having stated, to the victim, "I don't just want to have sex with you, I want to have a relationship with you") which have never been proved, beyond a reasonable doubt, to have caused any harm, and any discomfort or fear in the victim, Petitioner has been continuously unconstitutionally entrapped for his love and for his writing(petitioner is a published writer, and, even in jail, using the inside of a pen, not being allowed a pen in jail, petitioner wrote four novels, over 750 pages each, and one volume of poems and rap lyrics, by interviewing inmates, writing their life stories as if it would be his own), Considering also that the charges have been built on one another, that the initial charges have been pressed by others than the victim, that, beside the entrapping social media postings, the victim sent petitioner over 111 messages, but she was told by Professor Marshall(whose husband works for Orland Park Police)to claim that she does not know the petitioner, after she asked him to delete all her messages, and that she claimed petitioner caused her discomfort and fear only when petitioner was about to expose her plagiarism, that the victim stated, in a text message to their common friends, "Michael did not do anything to me, girl, I just wanted to see his ass rot in jail", also considering the consistent rejection on the part of the State Fifth Circuit Bridgeview Court,of petitioner's post-conviction revocation of his guilty plea and constant denial of petitioner's appeals – petitioner begs Your Honor's attention to his claim of Oppressive Bond.

Ground Four:

**Inefficient Defense Counsel/ Constant Rejection of Petitioner's Post Conviction Revocation of Guilty Plea, also of Petitioner's Appeals to the Appeal Court, Barred by the Same District Court**

Supporting Facts:

Petitioner and his Legal Guardian realized that he had been pushed into a wrongful conviction when a pro-bono lawyer explained to them why his inefficient defense counsel appeared in Court only twice and disappeared, after having forced petitioner into a wrongful conviction. The Circuit Court granted the defense counsel the petitioner's bond money, while the petitioner's mother, who borrowed the money, was never informed. Petitioner and his mother constantly appealed the wrongful conviction, but they have been constantly rebuked/barred from appealing, they have been constantly threatened and had suffered revengeful acts taken against them, while their desperate requests for appeal have been ignored by the same Circuit Court.

Constant hate and blunt Disability Discrimination permeated the entire process of petitioner's color of crime continuously built on each other, charges. The prosecution, family friend of the Board of Education lawyer who lost the FMLA case petitioner's mother brought, in 2012, when Honorable Judge A. St Ives rejected the Board's Summary Judgment(two days before petitioner was arrested the first time). In response to the allegation that "O'Connor did not need FMLA to treat her alcoholic 18 years old son", Honorable Judge St Ives stated that "Michael is primarily Bipolar". After continually stressing, degradingly, that petitioner is "an addict", but, illogically, denying him the treatment he needed, the prosecution and the Court constantly refused to accept that the petitioner is mentally ill, and punished petitioner repeatedly for his and his family's asking for his needed psychiatric medications, entrapping him wantonly and continuously, to be assaulted to be killed, by not medicating, over medicating, and/or mis – medicating him, while continuing to build criminal charges that have never been proved, to oppress the petitioner and his family. Even after five jail psychiatrists confirmed the petitioner's diagnostic, on November 21,2012, the prosecution and the Court denied the reduction of petitioner's bond and humiliated the petitioner's doctor who took the stand to explain that the petitioner might lack social graces, at times, but his trespass is never more than "just verbalizations". On May 21, 2013, the same District Court stated that the petitioner is not mentally ill, "he is just fooling all of us", and increased the petitioner's bond to the point that his exhausted family and community were not able to pay to release him anymore.

More Supporting Facts, In Support of the Previously Mentioned Grounds:

Michael is accused for being in love, being mentally ill, and for being a writer.

The following are only some of the District Court's errors in regard to Michael's case:

- The refusal of the defense lawyers to file a motion for Michael's Jury Trial; "They will be so mad at me if I file motion for trial" (Mr. Shay Allen's words, referring to Judge John Hynes and to the Prosecutors Coakley and Lawler).
- Charging Michael with having sent me to the victim's house on August 8th, 2012: on June 14th, 2012, when Michael was detained by the Orland Park police and sent to jail, Michael's lawyer, Mr. Needham, gave me the address of the victim, so I could find out from the source what did Michael do and what happened to him. I was told then, by the victim's father, "If he (Michael) is crazy, he might do something to my daughter". Because the girl was not at home, but visiting with her boyfriend, I wrote her a letter apologizing on Michael's behalf for anything inappropriate that Michael might have said, and explained to her that Michael is Bipolar. Michael did not have anything to do with my visit or letter writing and, in my judgment, this is the human way to interact with one another, instead of involving state actors who would use excessive force to harm and destroy ours and our childrens' lives.
- Michael's neuropsychologist doctor, Dr. T. Finn, took the stand on November 21st, 2012 (see attachment VIII), to explain to the District Court that Michael is not a danger to society, and that he has never been such, but, in his case, the Bipolar Disorder manifests itself, during his episodes, "through verbalizations" ("It affects his social graces", said Mr Allen, his defense attorney). She was met with malicious comments from the prosecutor and from the Court, who asked her to guarantee that Michael will never act out more than

verbalizing, in the future. Before Dr. Finn had time to answer, they already concluded that Michael should be kept in jail as a potential danger.

- The conspiracy to keep Michael "locked up" as "a danger to society" is, also, exposed by the Note to Judge Sheila McGinnis from the Prosecutor Lawler (attachment IX) in which the prosecutor is asking Honorable Judge McGinnis to keep the same number for the No Contact Order, but to allow them to raise it to a criminal level, which Honorable Judge McGinnis never did, since, she stated, the victim is not going to get a Criminal Order, because they never had physical interaction, they were not in a dating or domestic relationship.

- In the Civil No Contact order that Judge McGinnis issued, she specifically mentioned that Michael is allowed to go to DePaul and that she encouraged him to continue his studies and to graduate, but to "just stay away from this girl", advice which Michael followed, since he never made direct contact with the victim, as, erroneously the District Court suggests and the girl reporting that Michael was on the DePaul campus in April 2014, although she never saw him (see attachment IX).

- During the same Court hearing, on 6/22/2014, the victim perjured herself, by answering to Mr. Allen that Michael never abused her physically, or exploited her, etc., contrary to what she marked on her request for the No Contact order. She also stated that she does not have a Facebook account, but her friends told her about Michael's love poems posted for her in April/May, 2014. She also stated that Michel never contacted her directly, but it is only the Facebook posting and Michael's two letters from jail (which were sent by someone other than Michael) that disturb her. The victim stated that she never posted nor contacted Michael since the issuance of the No Contact order, which is not true, since she

e-mailed and posted multiple times, starting with e-mails that I saw, on Michael's screen, on 7/24/2012, at approximately 6:00 PM, ("When I saw you in Court, I was f..ed hard core by my bf"), telling Michael that she loves and misses him, that it was not her who reported to the police, but "someone snooped through" her things, urging Michael to call her "without hesitation". These postings and e-mail messages intensified after Michael and I filed a Civil Complaint against the Orland Park police for violating Michael's civil rights, which show that others than the victim pressed charges, revengefully, against Michael, and exposes the conspiracy and the entrapment Michael has been subjected to, especially after 10/8/2013 (see attachment X). Even if Michael was accused of having violated his Probation, by posting "thousands of threatening postings in Facebook" (Prosecutor B. O'Brien's words in the Honorable Judge Higgins' Court), and two letters from jail, which were sent by someone else than Michael, Judge McGinnis refused to punish Michael even with a misdemeanor, for the assumed trespassing of the No Contact order.

- The prosecutor's assertions were false, since Michael never threatened the victim, he never wrote any insulting or fighting word to her nor to her father, the Chicago Police Department could not find anything but "worthless materials" in Michael's and our confiscated computers (see attachment XI), and, when Honorable Judge Higgins asked the same prosecutor, what had Michael said that was threatening, the Prosecutor O'Brien answered, "… that he loves her and that he wants to marry her", to which Judge Higgins said she does not find that threatening, she DOES NOT FIND MICHAEL TO BE A DANGER, and that MICHAEL SHOULD BE RELEASD FROM JAIL. Honorable Judge Higgins also, rebuked the CCDOC psychiatric Mental Health Evaluation of Michael, by

stating that, in the light of Michael having written to the victim from jail, she finds Michael to be much more seriously ill than what the jail psychiatrist said, i.e. that Michael could stand for trial, if medicated, and that he could defend himself if he chooses to do so. Michael's Public Defender, Mr. Ryan Carlsen, told Michael that he was going to ask for the verdict of "Not Guilty by Reason of Insanity', but Mr. Carlsen took four more months of continuances, until, according to another lawyer, Mr. Brandstrader, Judge Higgins "was pushed into " an early retirement.

- We are back to square one again, since Michael's new Judge, the Honorable Erica Reddick, had not been informed about any of the precedent evaluations or Court Dispositions, and she had to continue Michael's case three more times, for a "Mental Health evaluation". Michael's court file at the Leighton criminal courts is almost empty, and documents like a letter of Michael's TASC therapist, Julia (which shed light on Michael's innocence), Julia having sent Michael by ambulance to Northwestern Hospital a week before Michael was accused of having posted in Facebook). Two Mental Health evaluations of Michael performed by Dr. Finn are missing, even though the second set of Evaluations were taken by a sheriff from Doctor Finn's office, to be brought to Court, in March, 2014. In the case of Michael's Bridgeview Court file, the clerk Sandy does not allow me to even see it, because she said that Judge Hynes ordered her to not allow me to see it, or to ask the clerk for Court transcripts which I intended to send to the Appeal's Court.

Attachment

05/09/2014

551

CATHER

05/09/2014

LETTERS OF OFFICE - PLENARY GUARDIAN OF PERSON OF A DISABLED PERSON (Rev. 12/23/03) CCP 0206

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - PROBATE DIVISION

ORIGINAL

ESTATE OF
MICHAEL W. O'CONNOR

A Disabled Person

No. 2013 P 003450
Docket
Page

LETTERS OF OFFICE - PLENARY GUARDIAN OF PERSON OF A DISABLED PERSON

VALENTINA O'CONNOR has been appointed plenary guardian of the person of MICHAEL W. O'CONNOR, a disabled person, and is authorized to have under the direction of the court of the custody of the ward and to do all acts required by law.

WITNESS, July 16, 2013

Dorothy Brown
Clerk of the Circuit Court

CERTIFICATE

I certify that this is a copy of the letters of office now in force in this estate.

WITNESS, July 16, 2013

Dorothy Brown
Clerk of Court

dlb

Michael O'Connor Attachment I

"Revised Complaint"

1.) OPPD (orland park police officers) after hearing (plaintiff) Michael was psychotic (from plaintiff) and not in a sober state manipulated said facts to force a twisted confession out of Michael. (6/17/14). mom's note: 6/14/12 (?)

2) Michael (plaintiff) was prior in a relationship with said victim despite what DA was informed of from OPPD.

3) After arrested and booked into Cook County Department of corrections, Correction ~~staff~~ medical staff denied Michael had metal health issues or any medical problems Despite years of diagnosis

double check dates

4.) Plaintiff was denied meds for (9) days at which point (after almost no sleep without his sedative for mania = olanzipine) and lack of depakote (depakote withdrawal) *MG - see on Note from mom, plaintiff had a siezure, on medical record ← siezure unclear

First aid lost siezure ... [illegible]

5.) Plaintiff rearrested for alledged "threats" against said 'victim' on (Oct 18) and denied meds again for (12-18) days (check dates from mom), placed in Div. 10, until plaintiff reached symptomatic "suicidal" stages and hospitalized at Cermak... mom's note: & @ O.P.? Tinley PK

mom's Note: from 10/18 to 11/08 = 20 days

6.) After being hospitalized for "1 and a half" days (not long enough) Dr. prescribed plaintiff Bipolar meds and additional 4 mg daily, Kalonopin Klonapin, and sent plaintiff back to Div. 10 psych deck which was a horrible division with many violent offenders (plaintiff had no violent crime). & mom: w/ the same cellmate who was making death threats to Michael & who, now, has been told that the O.P. detectives kept Mike for 24 hrs to "rat" on him.

7.) Plaintiff placed in a cell with a "very violent" (admittedly to plaintiff) offender who repeatedly threatened plaintiff and stole Michael's commissary $ and ~~plaintiff at one point~~ aggressed plaintiff several times... (can give specific instances)...

8.) Plaintiff wrote "2 or 3" request slips (mom: to be subpoenaed) to officer and got officers attention 3 times requesting to be removed from the cell during a 2 or 3 day lockdown asking to "please" be removed from cell because plaintiff felt his life was in danger...

mom: Beating 3 day occurred during the lock down

9.) Whenever plaintiff was removed from cell, violent cellmate got "angry and suspicious" and threatened plaintiff about

to speak w/ officer

Mom's Note:
* Racial Component
+ very aggressive cellmate, dangering Michael's life.

snitching about plaintiff's cellmate's and other people on the wings plan (GD "Gangster Disciples") plan to take over the unit.

see mom's e-mail mess of 11/06/12

10.) Plaintiff asked one last time (3rd or 4th) time, Co to take him off the unit. Co said he would be fine... OPPD took Plaintiff away for a day making cellmate suspicious. *

11.) * Plaintiff awoke during lockdown to cellmate tearing off iron from desk admittedly trying to make a shank to shank plaintiff. Cell mate also had plaintiffs commissary bag in corner of room...

12.) Plaintiff was terrified and got out of bed still tired from kalonopin, and got smacked in the face by aggressive cellmate.

13.) Cellmate continued to beat screaming plaintiff for about 15 minutes until plaintiff was knocked unconscious for upto 10 minutes.

14.) Plaintiff awoke in a pool of blood and cellmate forced him to lay on bunk and cover his head with blanket so bloody, bruised, puffed up face was hidden noting "you my bitch cellie" –

Raped?!!

to plaintiff.

(15) When officer came around he shined flash light on [crossed out] plaintiff asking him to "take off" the blanket and show his face, [crossed out] because he saw "The [pool] of blood" on the floor.

16.) Plaintiff complied and officer ran away leaving cellmate and plaintiff alone, cellmate punched plaintiff two more times in face threatening his families life (he had address from med sheet) if he ratted on [crossed out] him...

mom's Note: please subpoena this statement record

17.) When officers returned they recorded [crossed out] plaintiff [my] confessions and showed (plaintiffs) my face. They gave plaintiff very minimal medical attention and placed him in Protective Custody to keep him "safe."

mom's Note: they knew, from the start, Mike White was not guilty

18.) [crossed out] Medical records (traumatic event(s)) as they pertain to recent DCSM diagnosis from pshychiatrist...

please subpoena this

To the attention of

- Rebbecca: to get the final complant sheet done I would rather tell you the most recent case in person as I am contenued to get threatened and herrassed by County ~~workers~~ officers for most recent and most serious incident.
- Please revisit me so I can help you to make a final draft of our complaint. I was beat while cuffed for over 10 minnetes (pictures) and
- I have a witness who is currently free.
- Please come contact me in person by the 16th to help me and advise me in making a final complaint and getting the details more clear and sorted out!

mom's Note: please, Mike, help us locate this witness (# phone etc)

(3/14/05) CCCR 0

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of the State of Illinois
Plaintiff

v.

Michael W O'Connor
Defendant

COMPLAINT FOR PRELIMINARY EXAMINATION

No. 12 5 41 24

Patrycja R Wlosik
(Complainant's Name Printed or Typed) complainant, now appears befo

The Circuit Court of Cook County and states that

Michael W O'Connor
(Defendant)

10732 S Seeley Ave Chicago IL
(Address) has, on or abo

06-09-12
(Date) at 11635 Burnley Dr Orland Park Cook County IL
(Place of offense)

committed the offense of Cyberstalking

knowingly and without lawful justification on at least 2 separate occasions harassed the victim through the use of electronic communicatior in that s/h and transmitted a threat of sexual assault.

in violation of 720 ILCS 5 / 12-7.5(a)(1)
(Chapter) (Act) (Section)

CHARGE CODE

Det Rossi #6 - w care of Patrycja Wlosik
(Complainant's Signature)

STATE OF ILLINOIS
COOK COUNTY | ss. 10220 S. 76th Ave., Bridgeview, IL

11635 Burnley Dr, Orland Park, IL 60462
(Complainant's Address) (Telephone No.)

Patrycja R Wlosik
(Complainant's Name Printed or Typed)

being first duly sworn, Patrycja R Wlosik on oath, deposes and says that s/he read the foregoing complaint by him/her subscribed and that the same is true.

Det Rossi #6 -- in care of Patrycja Wlosi
(Complainant's Signature)

Subscribed and sworn to before me June 14, 2012

Dorothy Brown [signature]
(Judge or Clerk)

I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there is probable cause for filing same. Leave is given to file said complaint.

Summons issued, or Warrant Issued, or Bail set at — Judge ______ Bail set at, ______ Judge's No.

Judge ______ Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

Copy Distribution - 1. ORIGINAL - COURT FILE 2. DEFENDANT'S COPY 3. COOK COUNTY DOC COPY

COPY

G.J. NO. 737
GENERAL NO. 12CR-22315

CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT
CRIMINAL DIVISION
NOVEMBER 2012

ORIGINAL
FILE COPY
DO NOT REMOVE

The People of the State of Illinois
v.
Michael O'Connor

**INDICTMENT FOR**

CYBERSTALKING

A TRUE BILL

Foreman of the Grand Jury

WITNESS

Detective Eric Rossi

Filed December 5, 2012
Dorothy Brown, Clerk
Bail $

12 DEC -5 PM 1:08
CLERK OF THE CIRCUIT COURT
DOROTHY BROWN CLERK

attach to the other

# Michael Wolf O'Connor

10732 S. Seeley Ave.
Chicago, IL 60643
(773) 312 0041
depaul address

**Education** **DePaul University,** Chicago, IL
Bachelor of Arts in Media and Cinema Studies
Expected graduation: November 2012
Minor in Marketing

**Coursework** Film & Video Analysis and Aesthetics Video Editing
Computer Programming &Advanced Math Applications
Screenwriting
Theater Writing & Performance **add class**
Group Communication
Advanced Writing Rhetoric

**Experience** **Freelance Real Estate Contracting** June 2011 – July 2011

- Evaluated and appraised three properties to determine market value.
- Developed marketing incentives and discounts to persuade future buyers.
- Utilized online resources to advertise top-grade properties locally.
- Conducted background checks on potential tenants.
- Adjusted contracts for buyers to match property value and upkeep of property.

**High School Journalism Institute,** University of Indiana 2006-2008
*Staff Writer for Caravan Newsletter*

- Published over 20 articles on performance critiques, careers, theater, sports and opinion-editorial.
- Interviewed professionals, athletes and community figures.
- Cooperated with editors and staff and meet publication deadlines.

**Skills** Fluent in oral Romanian, Proficient in Latin
Proficient in Microsoft Word, Excel, PowerPoint, Access, Adobe Photoshop, and Final Cut Pro
Basic HTML

**Activities**

**United States Boxing Commission**
*Bourbon Street Tournament of Champions Award*
- Awarded First Place Champion in 2006 & 2008

**Self-Published Creative Writing & Poetry: "Manifest Destiny"**

Att. 11

Christopher L. Miree
525 S. State St.
Chicago IL, 60605

January 21, 2013

Honorable John Hynes,
Associate Judge of the Circuit Court of Cook County District 5
10220 S. 76th Ave.
Bridgeview, Illinois 60455

Dear Judge Hynes,

I am writing to you in support of my friend and DePaul colleague, Michael W. O'Connor. I met Michael when he was a freshman at DePaul and my roommate in the dormitory. I found him to be a hardworking, bright, friendly guy, who has a natural talent for writing and is highly intelligent. By the time he graduated from Mount Carmel High School, he wrote and published excellent articlés and research papers in the Caravan (Mount Carmel High School's newsletter), was an accomplished wrestler and boxer who won many gold and silver medals in the HS and Bourbon Street competitions, made the Honor Roll every year at MCHS, interviewed Mayor Daley while writing for the Caravan, and attended University of Indiana Summer High School Journalism sessions, obtaining many excellent letters from his Journalism professor. Mike continued writing poetry in college and a trilogy (*Manifest Destiny*), also excelling in many of his DePaul classes and campus activities.

Unfortunately, he is suffering with Mixed Bipolar Disorder. At a certain time, Michael's clinician, Ms. Elisabeth Sullivan, asked me to be a Personal Assistant for Mike. Although Michael is compliant with taking his medications, due to his ADHD, sometimes he literally forgets and might skip a dose - which might cause him to sometimes speak or interact in a socially inappropriate manner. Despite this deficiency, through his good heart, Mike has made a great impact on me.

I appeal to your compassion, your Honor, to please give my friend Michael a chance to graduate from the school he loves, and allow Mike to move on with his career, since I am convinced that once he is stable on his medications, Mike could become one of our greatest American writers. Through his kindness of heart and natural writing talent, Michael can help our society develop cultural sensitivity not only to other cultures, but especially to the compassion and emotional needs of the mentally ill.

Respectfully yours,

[signature]

Christopher Miree

Att. 11

October 19, 2007

**Re: Michael O'Connor**

To Whom it May Concern:

As a teacher at Mount Carmel High School, I have had the pleasure of knowing Michael O'Connor for over a year. He is a tremendous student and an asset to our school. I would like to take this opportunity to recommend Michael for your institution.

I feel confident that he will continue to succeed in his studies. Michael is a dedicated student and thus far his grades have been exemplary. In class, he has proven to be a take-charge person who is able to successfully develop plans and implement them. I require the students in my AP U.S. History class to take charge in their own education. Michael is a self-motivated student who consistently earned high scores in my class.

Michael is also currently taking my Introduction to Law class, and has demonstrated his abilities in oratory and critical thinking to a high degree. Michael is able to quickly identify a legal problem and then resolve it.

It is for these reasons that I offer high recommendations for Michael without reservation. His drive and abilities will truly be an asset to your establishment. If you have any questions regarding this recommendation, please do not hesitate to contact me.

Sincerely,

**Jeffrey L. Enright, Esq.**

**Teacher-Mount Carmel High School**

DEPAUL UNIVERSITY

Att. 15

Department of
University Ministry
2250 North Sheffield Avenue
Chicago, Illinois 60614-3673
773/325-7902

January 21, 2013

To Whom It May Concern:

I am writing today on behalf of Michael O'Connor who is right now in jail accused of 9 different criminal charges. I was Michael's professor and mentor at DePaul University. I know that Michael has been dealing with bi-polar depression and the use of drugs. For what I know of Michael, I don't think he is dangerous to our society. The long four months he has been in jail, I am sure, have been a hardship experience for him to learn not to get in trouble in the future. From my conversation with him last week, I know where his spirit is in terms of making a new life, dreaming, and correcting his own mistakes.

I ask that you consider not just the accusations of today but the circumstances of his life that brought him to where he was and is. I ask you to give him a new chance and to get the professional help he needs to overcome the challenges of his life.

Thank you for your time and attention.

Sincerely,

Fr. Guillermo Campuzano, CM
Director of Office of Religious Diversity
University Ministry

Attachment J

TERRY FINN, Ed.D.

Registered Clinical Psychologist, Certified School Psychologist

Nationally Certified Neuropsychologist

221 North LaSalle, Suite 400, Chicago, Illinois 60601

10001 South Western, Chicago, Illinois 60643

Phone: 312-907-2982 Fax: 312-944-1483 Fax: 773-238-7672

May 28, 2015

RE: Michael W. O'Connor

Dear Your Honor:

I am Michael's Neuropsychologist and I worked with Dr. Gohkale, his psychiatrist. We have treated Michael since 2008 for his Bipolar Psychosis, O.C.D., A.D.H.D., and anxiety. A neuropsychological evaluation has not been done since Michael's 05-9-2014 assault by the sheriffs in Judge Sullivan's Bond Court. This assault resulted, among other injuries, in multiple head concussions, which have not been properly diagnosed, nor treated, for more than one year (see attached Mt. Sinai Hospital's ER doctors' statement). Due to lack of treatment for his serious, potentially fatal head injuries, among other injuries, Michael suffered extensive neurological damage to his brain. (See Michael's recent statements)

Due to the lack of treatment after these assaults (traumatic brain injury, post-traumatic stress disorder, and extreme anxiety), Michael is in immediate need of psychiatric/medical intervention and treatment.

We recommend immediate psychiatric and medical treatment due to the multiplicity of Michael's disabling physical, cognitive, and mental conditions.

Sincerely,

Terry Finn

Terry Finn, M.A., Ed.D.

Licensed Clinical Psychologist #071-003165

Nationally Certified School Psychologist (NASP) #1282316

Nationally Certified Neuropsychologist

Special Teaching Certificate #2000703

Attachment 14

On May 26, 2015, at 8:17 PM, Valentina O'Connor <vocmoc@gmail.com> wrote:

Mike just called and asked me to send an urgent message to his lawyer, Rebecca. I took dictation over the phone:

"Rebecca, what are we going to do about the media? Mike needs to talk with you, today".

Then he switched to the first person:

"I am scared. I need help today. I am afraid that my brain is going to shut down my body. In April, I started having hammer pounding-like headaches. They gave me Tylenol, but the Tylenol does not help: the headaches got worse and worse. From the moment I get up, to the moment I fall asleep, I feel like I'm going to fall over, about 30 times/day.

“I am lightheaded all the time. like my brain is shutting down my body. I found myself on the floor a couple of times due to blacking out. I twitch a lot, uncontrollably, and, lately, because of my twitching, I can barely write."

(N.B., I, Valentina, can vouch for this, also, because, the last two times I saw Michael, when he was in the Hole, I thought that he must be very cold, he was shaking violently, I was afraid to even ask him, it was so strange that he could not stop shaking. He, also, did stop writing exactly two weeks ago.)

Michael continued:

"I twitch a lot uncontrollably, I see bright lights and I hear loud ringing. When I try reading, I get cramps in my brain and become nauseated.

“I can't keep standing in crowded bullpens, it's torture. My vision is impaired and my migraines are so bad that I hallucinate - visual and auditory hallucinations. Due to migraines, my speech is impaired. I have trouble enunciating.

“I am scared for my life. I think that I am going to die soon because of my untreated head concussions, that my brain is going to shut down my body. I need braces and need treatment for my concussions.

“Please ask the Judge to put me on GPS, so I could get treatment. I am not a flight risk and I am not a violent criminal."

29 South LaSalle
Suite 830
Chicago, Illinois 60603
Fax: 312-263-5953

**TERRY FINN, Ed.D.**
Registered Clinical Psychologist
Certified school Psychologist

10001 South Western
Chicago, Illinois 60643
Phone: 773-854-4100
Fax: 773-238-7672

Att. 111

Re: Michael O'Connor
Date: 5-17-2013

Dear Probation Officer:

Michael sees me for counseling + making progress. For further information please call 312-907-2982.

Sincerely,

Dr. Terry Finn

Attachment 111a

in:sent +Valent...

221 North LaSalle
Suite 400
Chicago, Illinois 60601
Fax: 312-944-1483

**TERRY FINN, Ed.D.**
Registered Clinical Psychologist
Certified School Psychologist
Nationally Certified Neuropsychologist

10001 South Western
Chicago, Illinois 60643
Phone: 312-907-2982
Fax: 773-238-7672

December 13, 2014

RE: Michael O'Conner

To Whom it May Concern:

Michael's DSM-5 Diagnosis includes Mood Disorder and Mixed Bipolar Disorder with Obsessive Compulsive Disorder along with an Attention Deficit Hyperactivity Disorder. His Obsessive Compulsive Disorder is the driving force for him to habitually call the girl in the family that he is forbidden to do by the Court. His obsessive behavior is directly related to his Obsessive Compulsive Disorder.

For further information, please call 312-907-2982.

Sincerely,

Terry Finn

Terry Finn, M.A., Ed.D.
Licensed Clinical Psychologist
#071-003165
Nationally Certified School Psychologist (NASP)
#1282316
Nationally Certified Neuropsychologist
Special Teaching Certificate
#2000703

Attachment III

SUDHIR M. GOKHALE, M.D.
HARCHARAN SANDHU, M.D.
GINA CHMELA, NP-C

To Whom it may concern,

Re: Micheal O'Connor

DOB: 06/18/1990

Michael is being treated by Dr.Gokhale. He has been a patient here since 2009. He is being seen for medication management with a diagnosis of Manic-Depressive Psychosis. He has been compliant with his visits in our office.

Sincerely,

Dr. Gokhale

05/18/13

? SOUTH CICERO AVE. SUITE 202 OAK LAWN, IL 60453 TELEPHONE (708) 636-2211 FAX (708) 636-5552

Att. 2 Att. II

To the attention of

- Rebbecca; to get the final complaint sheet done I would rather tell you the most recent case in person as I am continued to get threatened and harrassed by County officers for most recent and most serious incident.
- Please revisit me so I can help you to make a final draft of our complaint. I was beat while cuffed for over 10 minutes (pictures) and
- I have a witness who is currently free.
- Please come contact me in person by the 16th to help me and advise me in making a final complaint and getting the details more clear and sorted out!

Mom's Note: please, Mike, help us locate this witness (# phone etc)

"...you my bitch callie" —

Attachment 4

Att. 2

Att. 11

Michael's
Mt. Carmel
H.S. Gradu-
ation photo
(High Honors)
2009-2010

Root

Att. II
Michael's
pictures taken
in Court, by a
Pro-Bono lawyer
one week after
the Bond Court
assault.

Att-11

Aff II 3/2013





MC students get their shot at the title

# Fight Night

## 2005 Fight Night Matches and Winners

(winners are underlined)

160 Lbs.
Richard Blough (SR) vs. Mike Ward (SR)

105 Lbs.
Matt Marcheschi (SO) vs. Kendrick Murry (FR)

115 Lbs.
Mike O'Connor (FR) vs. Dominic Caruso (FR)

120 Lbs.
Nick Madia (SR) vs. Bob Piotrowski (SR)

Attachment III and V

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIFTH MUNICIPAL DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,
Plaintiff/Respondent,

vs.

MICHAEL O'CONNOR,
Defendant/Petitioner.

No. 12-CR-1278

Motion to Reduce Bond

REPORT OF PROCEEDINGS had at the hearing of the above-entitled cause, before the Honorable JOHN JOSEPH HYNES, one of the Judges of said District, on the 21st day of November, 2012.

APPEARANCES:

HON. ANITA M. ALVAREZ,
Cook County State's Attorney, by:
MS. KELLYN COAKLEY
Assistant State's Attorney,
on behalf of the Plaintiff;

MR. SHAY ALLEN,
on behalf of the Defendant.

Elizabeth A. Proietti
CSR #084-002544
10220 S. 76th Avenue
Bridgeview, IL 60455

the defendant's appearance here, or where are we at?

MR. ALLEN: No, your Honor. Your Honor, last week I filed a Motion to Reduce Bond with the State.

THE COURT: All right.

MR. ALLEN: And --

THE COURT: Well, when we get an opportunity, we'll bring him up here, and then we'll have that hearing.

MR. ALLEN: Thank you.

(Whereupon, the case was passed and recalled as follows:)

THE CLERK: Michael O'Connor, custody.

THE COURT: All right, this is Michael O'Connor. Counsel?

MR. ALLEN: Good morning, your Honor. Shay Allen on behalf of Mr. Michael O'Connor.

Your Honor, we're here today on my Motion to Reduce Bond with regards to Mr. O'Connor.

THE COURT: All right.

MR. ALLEN: I have, um, live testimony I would like to present with regards to a -- a Dr. Terry Finn, who is here today, in regards to the Motion

to Reduce Bond.

THE COURT: All right. All right, um, are you ready now, State, or you need a second here?

MS. COAKLEY: No, that's fine, Judge, we just did this.

THE COURT: You have an oral motion, is it? Is it -- or did you file something?

MR. ALLEN: I -- I filed it, Judge.

THE COURT: All right. Take a look at it.

MS. COAKLEY: Did you include a resume for your doctor?

MR. ALLEN: No, but I have one.

MS. COAKLEY: Thank you.

THE COURT: All right, I've had an opportunity to review the motion. All right, defense, you want to present evidence then?

MR. ALLEN: Yes, your Honor.

THE COURT: All right. Um, you can be seated. You can then call your first witness.

You can raise your right hand and be sworn, ma'am.

(Witness sworn.)

THE COURT: Have a seat.

MR. ALLEN: Good morning.

THE WITNESS: Good morning.

THE COURT: The microphone is turned on. If you lean forward --

THE WITNESS: Okey-dokey.

THE COURT: -- it will pick up your voice.

THERESE FINN,

Called as a witness on behalf of the Defendant/Petitioner herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY

MR. ALLEN:

Q Please state your name?

A Therese, T-h-e-r-e-s-e, Finn, F-i-n-n.

Q And what is your profession?

A Clinical psychologist.

Q Okay. And where did you go to college?

A College? I went to University of Illinois at Chicago.

Q Okay. And where did you go after that?

A I went to Northeastern Illinois University to get a Master's in Special Education. Then I went to Loyola University for a Doctorate in Clinical Psychology.

Q Um, since you -- after receiving your Doctorate in Clinical Psychology, where did -- where did you work after that?

A I worked at a hospital on the south side, Holy Cross Hospital as a neuro psychologist working with traumatic brain injuries and depression cases. Also, worked in the Chicago Public Schools as a neuro psychologist doing a lot of the trauma victims, beatings, gunshots, for about 25 years. And private practice since about 1989 with special ed children, attention problems, depression. Special population in clinical problems.

Q And, uh, so about how many years of experience do you have in your field?

A Probably 32. Thirty-two years.

Q And what, in particular, would you consider your specialty?

A Probably neuro psychology.

Q Okay. And what exactly is neuro psychology?

A It's the brain behavior relationship, and it's usually brought on by trauma or illness.

Q All right. Um, have you had the opportunity to meet with Mr. Michael O'Connor?

A Yes.

Q Okay. And when did you start -- when did you first meet Michael O'Connor?

A July 24th, 2012.

Q And after July 24th, 2012, how many times have you -- about how many times have you met with Mr. O'Connor?

A Four.

Q Now, as part of your treatment in dealing with Mr. O'Connor, did you also have an opportunity to speak to his psychiatrist?

A Yes.

Q And is his psychiatrist a Dr. Sudhir, which is S-u-d-h-i-r, Gohkale, which is G-o-k-h-a-l-e (sic).

A Actually it's G O H K A L E. He's hard to --

Q Oh, okay.

A Yeah. Yes, I did. He referred Michael to me. He had been seeing Michael, I think, since about 2010, and diagnosed him with bipolar disorder, attention deficit disorder, anxiety, and depression.

Q Now, in -- in your, um, dealings with Michael, what have you been able to ascertain in

regards to his danger to society?

A I don't believe he's a danger to society.

Q And why is that?

A Um, because he is more depressed, and he's more suicidal ideation. More a danger to himself.

Q But not to others?

A No.

Q All right. Now, um, in regards to coming to that conclusion in regards to his danger to others, did you also have an opportunity to speak to his psychiatrist about his danger to others?

A Yes, I talked to Dr. Gohkale November 16th, 2012, and because he had known Michael longer than I have, and I asked him that question, and he said -- he also agrees that he is not a danger to himself (sic).

MS. COAKLEY: I'm going to object to hearsay.

THE COURT: Well, it won't be offered for the truth, just it's something she took into account.

MS. COAKLEY: That's fine, Judge.

THE COURT: All right, go ahead.

BY MR. ALLEN:

Q Now, um, Doctor, as part of your -- your treatment of Michael, you're also able to analyze and

look at what medications he's prescribed for his illness?

A Yes. I am not an M.D., but I do have to know -- have knowledge of psycho pharmacology for various disorders.

Q And from that, you've had the opportunity to review Dr. Gohkale's notes in regards to the medications that Michael has been receiving?

A Yes.

Q Do you remember what those medications include?

A Yes. Depakote, D-e-p-a-c -- c-o-t-e -- k-o-t-e. Adderall, A-d-d-e-r-a-l-l. Vyvance, V-y-v-a-n-c-e. Zyprexa, Z-y-p-r-e-x-a. And I believe Zoloft, Z-o-l -- Z-o-l-o-f-t. Sorry.

Q Which of those medications are particulars for the bipolar, and which are for the ADHD?

A The Depakote is for bipolar, and the ADHD is Vyvance and Adderall.

Q And the Depakote for the bipolar, what exactly does that medication do?

A It, um, evens out the chemicals in the brain so that he -- that, in other words, with bipolar there's ups and downs, more agitation

and then with depression, so it -- it tries to even out the brain chemistry.

Q And the medication for the ADHD, there were two. What do those do in particular?

A What do they do?

Q Yes.

A They help him with focus and conversation. And, um, also, if he's in school, he's in DePaul University, and, um, for learning and lectures it also helps with processing verbal and auditory information.

Q Now, um, in dealing with Michael, have -- have you also had the opportunity to review the medications he's been receiving since he's been in custody?

A Yes.

Q And do you remember what those medications are?

A No, I don't. There were two, I don't -- I'm sorry, I do not.

Q Okay. Uh --

A One was unfamiliar to me. So. I can't remember.

Q Is your memory exhausted as to what

medications Michael has been taking since he's been in custody? Do you remember?

A No, I don't, I forgot, I'm sorry.

Q Okay. Is there anything that would help you remember if you saw it?

A Yes, the -- the hand notes that describe it.

Q Okay.

A Sorry.

MR. ALLEN: I'm going to show the Doctor what's been marked as Defendant's Exhibit 1 for refreshing her recollection, which is just the Cermak -- (inaudible conversation).

THE COURT: Do you need a second to review those?

MS. COAKLEY: Yeah, I'm just looking quickly, Judge. This is the first time I found out there's other discovery he didn't give me.

THE COURT: Sure.

Do you want to recess here?

MS. COAKLEY: No, that's -- that's fine, Judge.

MR. ALLEN: May I approach, your Honor, I'm sorry?

THE COURT: Go ahead.

V 0013

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,
Plaintiff,

vs

MICHAEL W. O'CONNOR
Defendant.

No: V0AB

# MOTION TO REDUCE BOND

NOW COMES the Defendant, **MICHAEL W. O'CONNOR**, by and through his attorney, Lee & Fairman LLP and pursuant to 725 ILCS 5/110.6 moves this Honorable Court to reduce his bond.

In support of said motion the defendant asserts the following:

1. He is 22 years of age.
2. That he has resided in the Chicago-land area his entire life.
3. He is a graduate of Mount Carmel High School. While at Mount Carmel he was enrolled in Honors and Advanced Placement courses.
4. That he currently resides in Chicago, Illinois.
5. He is a Senior at DePaul University where he has 140.5 credits. 192 credits are needed to graduate and with his course load he was scheduled to graduate in 2013. His major is Communications with a concentration in Media Cinema Literacy.
6. He has written a novel Manifest Destiny which is part one of a three part trilogy-Foundation Sunrise. He has been contacted by publishers for the rights to this book.
7. He has no prior felony convictions and one misdemeanor arrest that was scheduled to be dismissed by the State before this arrest.
8. That the current bond is set at $300,000D and is quite oppressive for a Class 4 felony.
9. The evidence the State has presented to the court to obtain this bond does not give a complete picture as many of the text messages and emails sent by Patrycja Wlosik to Michael O'Connor have not been presented.
10. Without being out of custody Mr. O'Connor cannot effectively assist in his defense.
11. Mr. O'Connor cannot effectively assist in his defense in custody because we will need to search his email accounts and text messages to help obtain evidence.
12. In addition Mr. O'Connor cannot effectively assist in his defense because he is not being properly medicated in Cook County Jail.

13. Mr. O'Connor has been diagnosed from the age of 14 with Mixed Bi-Polar disorder and ADHD. Over the years his mental health professionals have crafted a particular combination of medications for Mr. O'Connor's chemical composition that allow him be a productive member of society.
14. Cook County Department of Corrections does not have the resources to properly care for Mr. O'Connor's mental health or his physical well being for matter.
15. Mr. O'Connor was severely beaten by a fellow inmate and in turn Mr. O'Connor has become quite fearful and paranoid.
16. The statute violations Mr. O'Connor's First Amendment rights to freedom of speech. As there have no violent actions taken at all in this matter towards Ms. Wlosik.
17. That the Defendant does not pose a flight risk due to the fact that he has strong ties to the community.
18. The current bond is not considerate of the financial ability of the accused, in that he is a student.

**WHEREFORE** Defendant prays this honorable Court reduce his bond or other relief that this Court deems equitable and just.

By: ______________________

**Lee & Fairman LLP**
Firm # 48891
18300 S. Dixie Highway, 2nd Floor
Homewood. IL 60430
O 708-799-4848
F 708-799-4849

FILED-CR
13 MAR 12 PM 1:18
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS, )
Plaintiff, )
)
v. ) Nos. 12 CR 1267801
)
MICHAEL O'CONNOR, )
)
Defendant. )

**MOTION TO VACATE HIS PLEA**

**NOW COMES** the Defendant, **MICHAEL O'CONNOR**, respectfully requesting that this Honorable Court allow him to vacate his plea. In support of this request Defendant states the following:

1. This plea was not knowingly or voluntarily made.

2. This Motion is being filed by the undersigned counsel at the Defendant's request. The Defendant has been advised that counsel will not present this motion to the court or argue the same and has been advised to seek other counsel if he wishes to move forward.

**WHEREFORE**, the Defendant requests that this court allow him to vacate his plea, and for such further and other relief as this Court deem just.

Respectfully submitted,
**MICHAEL O'CONNOR**, Defendant

By:____________________
One of His Attorneys

**STEVEN A. GREENBERG**
**53 W. JACKSON BLVD., SUITE 1260**
**CHICAGO, ILLINOIS 60604**
**(312) 879-9500**
**ATTORNEY NO.: 15703**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

FILED
D5-12
MAR 05 2013
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

PEOPLE OF THE STATE OF ILLINOIS, )
)
Plaintiff, )
)
v. ) No. 12 CR 22315
)
MICHAEL O'CONNOR, )
)
Defendant. )

**MOTION TO VACATE AND DISMISS**

**NOW COMES** the Defendant, **MICHAEL O'CONNOR**, by his counsel, Steven A. Greenberg, requesting that this Court dismiss these cases. In support of this request, Defendant states as follows:

1. Defendant was sentenced to TASC probation.
2. Defendant has successfully completed the TASC probation.
3. Defendant filed a timely Motion to Vacate his convictions.

**WHEREFORE**, the Defendant requests that his conviction be vacated and this case be dismissed, and for such further and other relief as this Court deem just.

Respectfully submitted,
**MICHAEL O'CONNOR**, Defendant

By:____________________
One of His Attorneys

**STEVEN A. GREENBERG**
**53 W. JACKSON BLVD., SUITE 1260**
**CHICAGO, ILLINOIS 60604**
**(312) 879-9500**
**ATTORNEY NO.: 15703**

Att. IV / Deceitful Dalkin & (3) & Paul

had issued, on behalf of the girl, is the one Judge Hynes and the Orland Park Township, in Judge McGuinee's Court referred to, but: when I asked Michael about it, he told me that he hid that order, and the Sheriff who delivered that Order knew, or should have known, that Michael is mentally disabled, since Michael did tell him, when he came to our door, with that Order, that he is Bipolar and that I am his legal guardian. Also, when I called Attorney Tom Niedham's office for help for my son being interrogated by the Orland Park Police, on June 15, Mr. Niedham wrote a letter to the Orland Park Police, explaining to them that Michael is chronically mentally ill and giving them a list of the psychotropic medications that Michael takes – see attached). The orland park Police and the Sheriff who delivered that Temporary order of protection, should have known that Michael, being mentally ill and living at home, Michael's parents needed to be informed, that Michael needed a Law Guardian and that I, as I introduced myself to the Orland Park Police several times, to the Orland Park Mayor McLaughlin, their Township manager, Mr. Grim, etc, on 6/15/2012 and afterwards,I am Michael's Legal Guardian. I searched and found out that the temporary order was issued on 6/11/2012, and Michael stopped talking with the girl on 6/10/2012, which , again, invalidates the Orland Park police' charge that Michael(or myself for that matter) violated their order. I communicated this to Mr Dalkin, but, even the fact that he brings it up again, shows that he did not even care to listen to what I said, and I believe it creates legal grounds for me to ask for legal protection against the Human Rights, civil rights, disability rights abuses committed by Orland Park police, by a neglectful, adverse defense lawyer(Mr. Dalkin), and by an abusive Court of Law that threatens me with jail for a legal misconduct that, like my son, I had no idea about, nor did I ever committed.

In response to Mr. Dalkin's letter of response( his third paragraph): Mr. Dalkin, who, instead of filing a motion for trial and collecting discoveries, asked my son to sign a Permission form for Mr. Dalkin to review Michael's "good standing" at DePaul, his grades, his extra-curricular achievements, published material, etc.(which Mr Dalkin explained to my son and to me, is in order for him to persuade the Judge that Michael is a meritory student), Mr. Dalkin, as he states in his response to your inquiry, "sent a subpoena to DePaul University Student Affairs to secure a copy of Michael O'Connor's disciplinary file". I know that if you would ask him this question, he would, most probably, lie to you too, and say that it was only to show the Judge that Michael has no discipline issues. Once again, Mr. Dalkin should be paid for this by those he worked for, since securing a copy of my son's disciplnary file(which I demand to be returned immediately to us, since it was obtained on deceptive basis), and which I am sure does not contain incriminations of my son, otherwise I would have heard them in Court-, does not seem to serve my son's defense, but to do the job of Mr. Dalkin's personal friend, Prosecutor Lowler.

On September 13, Mr. Dalkin claims that he returned to Court where he "was tendered additional discovery by Assistant State Attorney Deborah Lowler". Mr. Dalkin never mentioned this to me and now, that he stated it, my suspicion that he worked with the Prosecutor, being influential in arresting and jailing my son for over 165 days, without a trial, in Maximum Security, where my son was beaten almost to death, my suspicion that the entire summer, instead of working on my son's defense, at least answering my son's and my desperate phone messages, he was busy providing the Prosecutor with information to incriminate my son, - is strengthened. I hope that you agree that I should not have paid for hurting my own beloved son.

Between September 13 and October 29, Mr Dalkin claims that he was contacted by Ms. Lowler who informed him that she will file additional charges against my son. Mr. Dalkin never told me that until two days before my son was arrested in Bridgeview Court, in my presence, on October 18, 2012. He called me approx. on October 17, and told me that I "should bring more money" to Court, since the Judge will charge my son with more crime. I was desperate, and asked Mr. Dalkin what is this about, and if my son will be arrested again, and for what crime, and how much money should I bring, but Mr.

Dalkin did not answer my questions, except, for the first time, since I hired him to defend my son, Mr. Dalkin spoke a bit about my son' nine criminal charges now, saying that, if he would be the parent of that girl, he would have done the same(i.e. delegate the police of Orland Park/Bridgeview Court to prosecute him -please note that the girl is 20 years old) , and for the first time, Mr. Dalkin, read to me some statements on a venting section of the Craig's list that my son made, leading to this new crimes charges, and as I took notes, my son, said, "the girl disappointed me-he stated the girl's name-, I wish I had never met her, from now on, I will take care of the little boy inside me and, as she is driving her new car now, with her boyfriend, I wish she would have an accident, and I think she is a ...". On October 18, 2012, Ms. Lowler, the Prosecutor friend of Mr Dalkin, only read the last part of the paragraph, i.e. the derogative word ("I think she is a ...", after which, she shouted to the Judge to have Michael "locked up", because "he is a danger to society". Noone of Michael's five previous psychiatrists, not even four jail psychiatrists, nor his teachers, nor his friends, nor his friends' parents, nor his Mount Carmel High School coaches, nor his counselors, EVER called Michael a "danger to society", but Mr. Dalkin did not even respond to that. Should I pay him for his accomplice silence? He did not have to request a Behavior Clinical Exam, since I gave him multiple mental health and behavior evaluations of Michael, other lawyers informed him also about Michael's disability and treatment needs, since I paid for many treatment programs for Michael since he was ten years old. Mr Dalkin did not plead for Michael's defense, Mr Dalkin just went along with their previous plans to send Michael to jail(for over 165 days), sarcastically and in a bullying manner, stating that Michael should be"treated in jail", maybe even killed, if he does not plead guilty, or incriminate him more, since, without his meds, Michael might act out inappropriately, or if, provoked by real criminal inmates, he might end up fighting back, so that the prosecutor and Mr Dalkin would have their criminalizing of my son's mental illness, validated, and Judge Hynes would have a reason to finally sentence Michael to prison. When I was in Court with Michael, on Oct.18, 2012, what Mr. Dalkin said, was that he wanted to find out if his client is "able to stand trial" and to understand Miranda Rights(even if Michael would have been able to understand Miranda, he would not have had a chance to, since the Orland police had Michael initial the Miranda only after they coerced Michael to sign a statement that they wrote). Judge Hynes ordered a Forensic Mental Health evaluation, that is to be done in jail. I am convinced now, that this has been arranged prior to the Oct 18, 2012, between Mr. Dalkin, and his friends, prosecutor Lowler and Judge Hynes, i.e. that they would ignore all the prior mental health evaluations of Michael, just to keep Michael in jail for a long time, and to force Michael into a wrongful conviction. Can anyone blame me for wanting my money back and/or for not being able to forget the nightmare Mr. Dalkin caused in our family and especially in my son's life? Mr. Dalkin also, asked me, on October 18, 2012, if I called the State Attorney Office, to ask them to inform Ms. Lowler that Michael has a mental disability, and I acknowledged I did(why did I have to and WHY didn't Mr Dalkin do his job?), at which Mr. Dalkin commented that Ms. Lowler "did not like this". And this is why, as my son told me, he was taken out of the prisoners's line going to regular jail, as the sheriff told him that he has to go to Maximum Security Jail, because the prosecutor "got mad" that Michael's mom called the State Attorney Office, and Michael was escorted through underground tunnels, he thought they were going to execute him, to the Max.Security Division 10. Also this must be why-since Michael refused to plead guilty, on Nov, 6, 2012, when he was taken for a day from the Max Security, by the Top Crime Suburban Squad, back toOrland ParkPolice, to be charged with more crimes, so as to be sent to prison by Judge Hynes, he was extremely severely beaten and almost killed( his head was twice his normal size for more than two weeks, he couldn't open his mouth for four days, his eyes' muscles and his gums permamanently damaged, as this killer inmate wanted to separate Michael's head from his body, biting him on the neck and banging his head on the concrete floor for 20 minutes without the guards intervening until my son was almost dead, left with two permanent hypertensive lesions under the cortex of his Right brain lobe, permanent TBI, plus PTSD), by an inmate who was a killer and [illegible]

Please allow me to stop explaining why I think that Mr. Dalkin should return my money, since it is mostly a symbolic act, otherwise I would feel to me that I paid immoral law people to wrongfully incriminate, prosecute and fatally harm my beloved son. Also, since I am extremely scared of Mr Dalkin and his powerful friends, please do keep this response confidential: my son is still in their hands, and I am very afraid that I myself could be arrested or killed by their "arrangements", since, if I would disappear, noone would be fighting for justice for my son anymore. Please do kindly understand, maybe you are a parent also, please try to understands my fear, I am an immigrant to this country and I grew up under communism, fascinated by the human rights respect the US displays and what I lived through my son's misrepresentation by people like Mr.Dalkin not only challenges my faith in humanityor in the judicial system, but it freezes the blood in my veins. On the other hand, as you can see, by my courage to even share some evidence I collected, with you, I still hope that one day, the good people and parents of the mentally ill, many of whom I had the honor to meet, will prevail in their demand that the mentally ill be treated with dignity and humainly rather than incriminated and denied the mental health services they should be given instead of punishing them for their mental illness and making them more sick. I am a Special Education teacher and,for more than twenty years, I worked with mentally ill children in both private and public schools in this country and as you can imagine, I am a strong advocate(and very hard worker) for their rights.

Sincerely yours,
Valentina O'Connor's [signature]

N.B. Re: the phone calls/messages that my son and I, in desperation, made/left for Mr. Dalkin, it was only because he never responded, except three times, when I hired him, when he admonished me that I called, and the only time he talked with me about my son's case, was the previous day before the Oct 18 Court appearance. Even if the numbers of messages he claims we left were true(although I suspect he is greatly exaggerating), since he never used our information to file motion for trial or to defend Michael, since he did not respond to our messages, except twice, to admonish me and right before Oct 18, 2012- makes me believe that he never even listended to them. Also, regarding my son's file, he NEVER collected any discoveries nor does the file contain any evidence of Mr. Dalkin having put in any work for my son's defense(as per the lawyer to whom Mr. Dalkin claims he gave Michael's file).

[initials: VO'Connor]

DEPAUL UNIVERSITY

Dean of Students Office
Room 307
2250 North Sheffield Avenue
Chicago, Illinois 60614-3673
773/325-7290
FAX: 773/325-7396

November 21, 2012

Mr. Michael O'Connor
c/o moconn36@mail.depaul.edu

10732 S Seeley Ave
Chicago, IL 60643

Dear Mr. O'Connor,

The Dean of Students Office has received information that in at least January 2012 and October 2012 you have demonstrated "behavior that endangers [you] or that creates a direct threat that you might endanger [yourself]" and/or "behavior that endangers others, or that creates a direct threat that [you] may endanger others."

As such, effective immediately, I have made the decision to temporarily involuntarily withdraw you from the University pursuant to the Involuntary Withdrawal policy.

In order to return to DePaul, you must meet the following conditions:

1. You must provide documentation from a mental health care provider indicating that your behavior does not endanger yourself or create a direct threat that you might endanger yourself and that your behavior does not endanger others or create a direct threat that you may endanger others.

2. You must meet with a mental health professional for an evaluation. If the mental health provider specifies a treatment plan, you must you must fully participate in and comply with that treatment plan for at least six months or, if the mental health professional specifies a treatment plan of less than six months, for the duration of the treatment plan; and provide verification of that participation and compliance. In order to verify this, you must sign a release of information form from the provider who evaluates you so that information can be exchanged between the provider and appropriate University personnel, including myself. My contact information is:

   Art Munin, Dean of Students
   DePaul University
   2250 N. Sheffield, Room 307
   Chicago, IL 60614
   (773) 325-7292
   amunin@depaul.edu

Attachment 1K

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, | ) | |
| vs. | ) | No. 14 CR 8935 (01) |
| MICHAEL O'CONNOR, Defendant. | ) | |

REPORT OF PROCEEDINGS had at the hearing of the above-entitled cause, before the Honorable ROSEMARY G. HIGGINS, Judge of said court, on the 4th day of September, A.D. 2014.

PRESENT:

HON. ANITA M. ALVAREZ,
State's Attorney of Cook County,
BY: MS. BRIDGET O'BRIEN,
Assistant State's Attorney,
On behalf of the People;

LAW OFFICES OF ALLEN T. SHAY
BY: MR. ALLEN T. SHAY,
On behalf of the Defendant.

Carolyn C. Brown, CSR No. 084-003848
Official Court Reporter - Circuit Court of Cook County
County Department - Criminal Division

THE CLERK: Michael O'Connor, three matters.

THE CLERK: He needs to be arraigned, Judge, he has three cases.

THE SHERIFF: Coming out.

MS. O'BRIEN: For Assistant State's Attorney.

THE COURT: Mr. Allen could you state your name for the record, please.

MR. ALLEN: Yes. It's Shay Allen. First name is S-h-a-y. I'm here on behalf of Mr. Michael O'Connor, who is standing to my right in open court.

THE COURT: As you're aware Mr. Allen, Mr. O'Connor has a new matter pending before the court for today. For purposes of arraignment are you filing your appearance on that case?

MR. ALLEN: I am, your Honor.

THE COURT: Leave to file your appearance on that case is granted. I am tendering a copy of the charging document on that aggravated stalking charge --

MR. ALLEN: Thank you, your Honor. I acknowledge --

THE COURT: -- in violation of the civil liberty.

MS. SHEA: I acknowledge receipt of a two count indictment here, waive formal reading. There will be a plea of not guilty. I'll make an oral motion for discovery. I'll follow it with a written motion for

discovery, your Honor.

THE COURT: Thank you. State.

MS. O'BRIEN: Your Honor, we are also making our motion for discovery as well as asking leave to file our answer for discovery. I have tendered discovery to Mr. Allen today. The only matter outstanding is a photocopy of a letter, once I have that retrieved from ERPS, the letter, that would be at the crux of this matter, and then discovery on this case will be complete.

Additionally, your Honor, for the record, this matter was a direct indictment. Mr. O'Connor has yet to have a bond hearing on the new case.

THE COURT: Would you like to proceed with that bond hearing now?

MS. O'BRIEN: I would, Judge.

THE COURT: Go ahead.

MS. O'BRIEN: I am today filing with the court the State's petition for a hearing on denial of bail pursuant to Illinois Compiled Statutes, Section 5 dash 110 dash 6.03. That familiar statute allows for petition for discretionary no bail hearing when the defendant is charged with the felony offense of aggravated stalking, which is the charge alleged in the

new matter before the court, 14 CR 14553.

Judge, the State brings this petition and believes that the proof is evident and the presumption is great that the defendant has, in fact, committed the offense of aggravated stalking, in that, on or about July 17, 2014, the defendant made contact with the victim. That contact was in direct violation of a civil no contact order under Case No. 120PS0369.

Additionally, it was also in direct violation of the conditions of the bond in the case also pending before your Honor, 14 CR 8935 and 14 CR 10369, in that, the defendant mailed the letter to the victim at her residence. This act was in furtherance of a course of conduct directed at the victim, which caused the victim to suffer further emotional distress and mental anguish.

Based on those facts, your Honor, we would ask that the defendant be held no bond.

THE COURT: What is the evidence that the State has to present that the defendant sent that letter?

MS. O'BRIEN: Your Honor, the letter, on the envelope had as a return address the defendant's name. Additionally, your Honor, the victim would testify that

when she opened the letter the letter was, in fact, signed by the defendant Mr. O'Connor. That she's received several of these letters in the past. She recognized the handwriting to be that of the defendant Mr. O'Connor.

THE COURT: What was the content of the letter?

MS. O'BRIEN: Your Honor, again, in this letter the defendant is continuing his ongoing methods of harassment, telling the victim repeatedly again that he loves her, that he wants to marry her, and that he will stop at nothing for these things to take place. Unfortunately, Judge, as to exact quotes from the letter, I can't provided those I can only provide that summation that I've just given to the court as the letter has been inventoried, and I do not have a copy of the actual letter to give to the court.

THE COURT: But you will get that copy for Mr. Allen in the interim.

MS. O'BRIEN: I will absolutely, Judge. The detective has already been notified to collect that letter and bring it to me.

THE COURT: Thank you. And would you like to be heard on that, Mr. Allen, on the State's petition for denial of bail.

MR. ALLEN: Yes, your Honor. Only that the letters, there are no allegations as of yet the letter contained anything directly, directly in regards to bringing harm to the victim in this matter at all. The letters and previous letters many of them contains poems that are along the lines dealing with love but nothing in regards to violence.

THE COURT: Well, the statute for the no bail does require that there be a real and present threat to the physical safety of the victim. In this case I do not see that there is a real and present threat to the physical safety but he's also in violation of both of my bonds which was no contact which I advised you of in both cases as well as the order of protection. So I don't think that the State meets the requirements for no bail based on the fact that he is currently incarcerated on no bail in two other of the cases, and he could not have actually posed a real and present threat to physical safety. So no bail under the statute of 5110 dash 6.3 is denied. But I will set bond at 500,000 D.

So Mr. O'Connor, I understand that these letters were sent through other people on the tier, that you gave letters to other people. Now

don't even speak because you can't talk without the harm of your saying something on the record that would incriminate you. I'm just letting you know that you're causing additional problems on the tier, because now all the letters by all the inmates, more than 400 have to be screened in case you should do this again. And so all of their rights to send mail are being abridged because of your conduct in giving the letter to somebody else to mail. That's the allegation anyway. I am advising you that you are harming yourself further by this conduct. In addition to seriously harming the complaining witness in this matter. I am also asking about the status of the expert. I am ordering that the defendant be reevaluated. We have received a forensic clinical services evaluation indicating that you are mentally fit to stand trial with medication. In light of this new case I am questioning that finding, and I am ordering a reevaluation of you. You must go to that and participate in that violation. And then I'm going to send the additional letters that you have sent the victim that are the basis for the new charges under 14 CR 14553, for which we've

just held this bond hearing. And asking them to reevaluate.

And when do you believe that your expert's evaluation report will be complete, Mr. Allen?

MR. ALLEN: Your Honor, I believe Dr. Henry will have his evaluation done by October 21st.

THE COURT: Would this be Dr. Stafford Henry?

MR. ALLEN: Yes, your Honor.

THE COURT: That's great. He's a great expert. What date did you say?

MR. ALLEN: October 21st.

THE COURT: Would you like that on all the cases by agreement?

MR. ALLEN: Yes, your Honor.

THE COURT: And I like the haircut.

MS. O'BRIEN: Your Honor, on the other matter before the court we are filing violations of the bailbond that he was advised of no contact and he did violate that contact.

THE COURT: File the violation of bailbond in those cases are granted and those cases will be no bail.

MS. O'BRIEN: Thank you, your Honor. Oh, Judge, one other matter. I did tender discovery to Mr. Allen today. On the matters ending in 8935 and 10369, I did

tender all of the defendant's medical records since he's been incarcerated on those two matters. I also tendered --

THE COURT: I don't recognize either of those numbers. The numbers that you've just read to me.

MS. O'BRIEN: 14 CR 8935.

THE COURT: Okay that's --

MS. O'BRIEN: Judge, these are the matters that were pending before the court originally.

THE COURT: All right, no -- with regard to the discovery I don't have that case number, unless there's area another number here -- oh, yes. I've got 14-10369, okay. So just tell me which cases your discovery is complete?

MS. O'BRIEN: Judge, discovery is not complete on any of the cases yet.

THE COURT: All right. So what's outstanding?

MS. O'BRIEN: Outstanding, your Honor, on the matter ending in 8935, we're still waiting for the return on the items that were seized pursuant to the search warrant in that case. Namely, the download of the defendant's computers. On the matter ending in 10369, we are still awaiting the inventories to be retrieved on that matter, copies of the letter, copies of the

Face Book search warrant, things of that nature. Additionally, your Honor, we're also waiting now on the transcript from the hearing from the extension of the civil no contact matter where the victim --

THE COURT: And that's on --

MS. O'BRIEN: -- had to testify. That will be relevant to all three matters, I believe, considering all three matters pertain to the same victim.

MR. O'CONNOR: I'm sorry, your Honor.

THE COURT: Mr. O'Connor, you don't have to apologize to me, but think about what you are doing to this other individual. Even if you are declaring your love and what you perceive as positive feelings it's causing harm to another individual, but more importantly it's causing harm to you because you are violating all of my orders not to do that.

MR. O'CONNOR: Absolutely. I'm sorry.

THE COURT: I don't want to see that happening.

MR. O'CONNOR: It won't happen again. Ever.

MR. ALLEN: I acknowledge receipt of discovery from the State today, your Honor.

THE COURT: Thank you.

(The above-entitled cause was continued to October 21, 2014.)

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

I, CAROLYN C. BROWN, an Official Court Reporter for the Circuit Court of Cook County, County Department - Criminal Division, do hereby certify that I reported in shorthand the proceedings had at the hearing of the above-entitled cause, and that the foregoing is a true and accurate transcript of the proceedings had.

Carolyn C. Brown
Official Court Reporter
CSR No. 084-003848
Circuit Court of Cook County
County Department - Criminal Division

Dated this 2nd day
of October, 2014.

V UIS IS

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,
Plaintiff,

vs.

MICHAEL W. O'CONNOR
Defendant.

No: V0AB

## *MOTION TO REDUCE BOND*

NOW COMES the Defendant, **MICHAEL W. O'CONNOR**, by and through his attorney, Lee & Fairman LLP and pursuant to 725 ILCS 5/110.6 moves this Honorable Court to reduce his bond.

In support of said motion the defendant asserts the following:

1. He is 22 years of age.
2. That he has resided in the Chicago-land area his entire life.
3. He is a graduate of Mount Carmel High School. While at Mount Carmel he was enrolled in Honors and Advanced Placement courses.
4. That he currently resides in Chicago, Illinois.
5. He is a Senior at DePaul University where he has 140.5 credits. 192 credits are needed to graduate and with his course load he was scheduled to graduate in 2013. His major is Communications with a concentration in Media Cinema Literacy.
6. He has written a novel Manifest Destiny which is part one of a three part trilogy-Foundation Sunrise. He has been contacted by publishers for the rights to this book.
7. He has no prior felony convictions and one misdemeanor arrest that was scheduled to be dismissed by the State before this arrest.
8. That the current bond is set at $300,000D and is quite oppressive for a Class 4 felony.
9. The evidence the State has presented to the court to obtain this bond does not give a complete picture as many of the text messages and emails sent by Patrycja Wlosik to Michael O'Connor have not been presented.
10. Without being out of custody Mr. O'Connor cannot effectively assist in his defense.
11. Mr. O'Connor cannot effectively assist in his defense in custody because we will need to search his email accounts and text messages to help obtain evidence.
12. In addition Mr. O'Connor cannot effectively assist in his defense because he is not being properly medicated in Cook County Jail.

13. Mr. O'Connor has been diagnosed from the age of 14 with Mixed Bi-Polar disorder and ADHD. Over the years his mental health professionals have crafted a particular combination of medications for Mr. O'Connor's chemical composition that allow him be a productive member of society.
14. Cook County Department of Corrections does not have the resources to properly care for Mr. O'Connor's mental health or his physical well being for matter.
15. Mr. O'Connor was severely beaten by a fellow inmate and in turn Mr. O'Connor has become quite fearful and paranoid.
16. The statute violations Mr. O'Connor's First Amendment rights to freedom of speech. As there have no violent actions taken at all in this matter towards Ms. Wlosik.
17. That the Defendant does not pose a flight risk due to the fact that he has strong ties to the community.
18. The current bond is not considerate of the financial ability of the accused, in that he is a student.

**WHEREFORE** Defendant prays this honorable Court reduce his bond or other relief that this Court deems equitable and just.

By: ______________________

**Lee & Fairman LLP**
Firm # 48891
18300 S. Dixie Highway, 2nd Floor
Homewood, IL 60430
O 708-799-4848
F 708-799-4849

FILED-CR
13 MAR 12 PM 1:18
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS, )
Plaintiff, )
v. ) Nos. 12 CR 1267801
MICHAEL O'CONNOR, )
Defendant. )

**MOTION TO VACATE HIS PLEA**

**NOW COMES** the Defendant, **MICHAEL O'CONNOR**, respectfully requesting that this Honorable Court allow him to vacate his plea. In support of this request Defendant states the following:

1. This plea was not knowingly or voluntarily made.

2. This Motion is being filed by the undersigned counsel at the Defendant's request. The Defendant has been advised that counsel will not present this motion to the court or argue the same and has been advised to seek other counsel if he wishes to move forward.

**WHEREFORE**, the Defendant requests that this court allow him to vacate his plea, and for such further and other relief as this Court deem just.

Respectfully submitted,
**MICHAEL O'CONNOR,** Defendant

By:____________________
One of His Attorneys

**STEVEN A. GREENBERG**
**53 W. JACKSON BLVD., SUITE 1260**
**CHICAGO, ILLINOIS 60604**
**(312) 879-9500**
**ATTORNEY NO.: 15703**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

FILED
MAR 05 2013
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

PEOPLE OF THE STATE OF ILLINOIS, )
Plaintiff, )
v. ) No. 12 CR 22315
MICHAEL O'CONNOR, )
Defendant. )

## MOTION TO VACATE AND DISMISS

**NOW COMES** the Defendant, **MICHAEL O'CONNOR**, by his counsel, Steven A. Greenberg, requesting that this Court dismiss these cases. In support of this request, Defendant states as follows:

1. Defendant was sentenced to TASC probation.
2. Defendant has successfully completed the TASC probation.
3. Defendant filed a timely Motion to Vacate his convictions.

**WHEREFORE**, the Defendant requests that his conviction be vacated and this case be dismissed, and for such further and other relief as this Court deem just.

Respectfully submitted,
**MICHAEL O'CONNOR,** Defendant

By: ____________________
One of His Attorneys

STEVEN A. GREENBERG
53 W. JACKSON BLVD., SUITE 1260
CHICAGO, ILLINOIS 60604
(312) 879-9500
ATTORNEY NO.: 15703

Attachment V — Go to this judge to be judged!!!

Civil No Contact Order

CCG 0806-30M-6/11/0

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

_______________ himself/herself and/or on behalf of

Patrycja R Wlosik, Petitioner

v.

Michael O'Connor, Respondent

RESPONDENT SERVED IN OPEN COURT

Case No. 12OPSO369

☒ Independent Proceeding
☐ Criminal Proceeding
☐ Delinquency Petition

LEADS NO. _______________

| PETITIONER | ADDRESS | CITY/STATE/ZIP |
|---|---|---|
| Patrycja R. Wlosik | ☒ Check if omitted pursuant to Statute) | |

| RESPONDENT | ADDRESS | CITY/STATE/ZIP |
|---|---|---|
| Michael O'Connor | 10732 S. Sealy Ave | Chgo IL 60643 |

| Birthdate (Required for LEADS) | Sex | Race | Height | Weight | Hair | Eyes |
|---|---|---|---|---|---|---|
| 6-17-90 | M | Cauc | 5'9 | 160 | Black | Green |

## CIVIL NO CONTACT ORDER

4653 ☐ Emergency 4654 ☒ Plenary

The following persons are protected by this Order; (1) PETITIONER'S NAME: Patrycja R. Wlosik

(2) OTHER PROTECTED PARTIES: _______________

Date, time and place for further hearing:

Date: _______________ Time: _______________ Courtroom/Calendar No.: _______________

Location: _______________

This Order was issued on:
Date: 7-9-12 Time: 1130 Am

This Order will be in effect until:
☒ Date: 7-7-14 Time: 130 pm

☐ **FOR EMERGENCY ORDERS ONLY:** The court finds good cause to grant the remedy, regardless of prior service of process or of notice upon the Respondent, because the harm which that remedy is intended to prevent would be likely to occur if the Respondent were given any prior notice, or greater notice than was actually given, of the Petitioner's efforts to obtain judicial relief.

BASED ON THE FINDINGS OF THIS COURT, ☒ WHICH WERE MADE ORALLY FOR TRANSCRIPTION, OR ☐ WHICH ARE SET OUT IN A SEPARATE INSTRUMENT FILED WITH THE COURT, AND WITH THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER AND OVER ALL NECESSARY PARTIES, IT IS HEREBY ORDERED THAT:

1. ☒ The Respondent is to stay away from the Petitioner.
2. ☒ The Respondent is to stay away from any other person protected under this Civil No Contact Order.
3. ☒ The Respondent is prohibited from physical abuse, harassment, intimidation of a dependent, interference with personal liberty, or stalking any person protected under this Civil No Contact Order.
4. ☒ The Respondent is prohibited from entering or remaining present at the ☒ school ☒ place of employment of any person protected under this Civil No Contact Order. No unlawful @ DePaul School

ENTER
JUL - 9 201
CLERK OF THE CIRCUIT OF COOK COUNTY, DEPUTY CLERK

Atty. No. _______________ Pro Se 99500

Attorney (or Pro Se Petitioner) Name: Prose

Address: _______________

State/City/Zip: _______________

Telephone: _______________

I HEREBY CERTIFY THE ABOVE TO BE CORRECT. 7-9-12 DATE, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL

Date: 7-9-12

Judge _______________ Judge's No. 1858

This order is the command of the Circuit Court ...

ANY KNOWING VIOLATION OF A CIVIL NO CONTACT ORDER IS A CLASS A MISDEMEANOR.
ANY SECOND OR SUBSEQUENT VIOLATION IS A CLASS 4 FELONY.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

...ER ALLEGES AS TO RESPONDENT THAT: (2 of 2 Pages)

(Rev. 8/26/...)

The following individuals are alleged to be persons who need to be protected from abuse by Respondent:

Patrycja Wlosik

☒ Respondent has committed the following acts:

[State details of incident(s) of abuse (including time and place), as well as effects of incident(s) on Petitioner.]

Incident(s): Verbal abuse, physical abuse, sexual harassment, exploitation, stalking (cyber-stalking), threatening, intimidation of a dependent, interference with physical liberty, willful deprivation.

(.9) "Stay away" means for the Respondent to refrain from both physical presence an nonphysical contact with the petitioner whether direct, indirect (including, but not limited to, telephone calls, mail, email, faxes, and written notes), or through third parties who may or may not know about the order of protection.

which constitute ☒ non-consensual sexual conduct; or ☐ non-consensual sexual penetration.

☐ Police report not made ☒ Police report made Police report no. 12-00067738

☒ FOR EMERGENCY PETITIONS ONLY: The harm will be likely to occur if the Respondent were given any prior notice, or greater notice than was actually given, of the Petitioner's efforts to obtain judicial relief.

REMEDIES REQUESTED

PETITIONER REQUESTS THAT THE COURT FIND THAT THE FOLLOWING ARE PROTECTED PERSONS:

Patrycja R Wlosik

WHEREFORE, PETITIONER REQUESTS THE ENTRY OF A CIVIL NO CONTACT ORDER SETTING FORTH THE FOLLOWING REMEDIES:

1. ☒ The Respondent is to stay away from the Petitioner.
2. ☒ The Respondent is to stay away from any other person protected under a Civil No Contact Order entered in this matter.
3. ☒ The Respondent is prohibited from physical abuse, harassment, intimidation of a dependent, interference with personal liberty, or stalking any person protected under a Civil No Contact Order entered in this matter.
4. ☒ The Respondent is prohibited from entering or remaining present at the school and/or place of employment of any person protected under a Civil No Contact Order entered in this matter.
5. ☒ (9.5) "Stay away" means for the Respondent to refrain from both physical presence and nonphysical contact with the Petitioner whether direct, indirect (including, but not limited to, telephone calls, mail, email, faxes, and written notes), or through third parties, electronic communication who may or may not know about the Order of Protection.

Pro Se
Signature of Attorney or State's Attorney

X Patrycja Wlosik
Signature of Petitioner

...R THE PENALTIES OF PERJURY AND AS PROVIDED BY LAW PURSUANT TO SECTION 1-109 OF THE CODE OF CIVIL PROCEDURE, THE ...RSIGNED CERTIFIES THAT THE STATEMENTS SET FORTH IN THIS INSTRUMENT ARE TRUE AND CORRECT, EXCEPT AS TO MATTERS ...ED TO BE ON INFORMATION AND BELIEF AND AS TO SUCH MATTERS THE UNDERSIGNED BELIEVES THE SAME TO BE TRUE.

X Patrycja Wlosik
Signature of Petitioner

... No. ______

...orney (or Pro Se Petitioner) Name: Pro Se Pro Se 99500

...: ______

...ip: ______

(____) ______

ANY KNOWING VIOLATION OF A CIVIL NO CONTACT ORDER IS A CLASS A MISDEMEANOR.
ANY SECOND OR SUBSEQUENT VIOLATION IS A CLASS 4 FELONY.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Gmail - Fwd: prw - m4w - 22 (op) Page 1 of 1

Attachment VI

Gmail

Valentina O'Connor< vocmoc@gmail.com>

**Fwd: prw - m4w - 22 (op)**
1 message

**michael o'connor**< chirishbeast@gmail.com>
To: vocmoc@gmail.com

Fri, Jun 7, 2013 at 11:20 PM

---------- Forwarded message ----------
From: **craigslist reply eb12** <eb12cf5a27373a69950d63f6f7bc2c17@reply.craigslist.org>
Date: Fri, Jun 7, 2013 at 5:41 PM
Subject: prw - m4w - 22 (op)
To: zcnhv-3854709646@pers.craigslist.org

why are you calling my name when i am on top of you i need to know. i totally dig dominant guys who can get in control of me so reach me right now without hesitation at Jcuktn@live.com

I miss you so much.

Original craigslist post:
http://chicago.craigslist.org/chc/mis/3854709646.html
About craigslist mail:
http://craigslist.org/about/help/email-relay
Please flag unwanted messages (spam, scam, other):
http //craigslist.org/mf/0a935337b2417f9a014949eeb041c3fea2529aad.1

j9.jpg
8K

her messages - with the exception of those that I forwarded to my account, few ones, have been spammed (hidden) by someone I think by those who were seeking to ENTRAP Michael using her as a bate.

Michael went voluntarily to the NWestern Hospital asking for help during his troubled time. He also asked his psychiatrist Dr. Gokhale & his therapist Dr. Timm - for help.

- CRUELTY & PREDATORY behavior - on her side
- Michael's diagnosed, since 2008, with:
- Bipolar Psychosis disorder
- Anxiety & depression } since 2012 (CC&OC) ← PTSD due to almost FATAL beat TBI
- ADHD

https://mail.google.com/mail/u/0/?ui=2&ik=68be970cce&view=pt&search=inbox&th=13f... 6/10/2013

**Shay Allen**

**From:** Joey Castro [italianpride8233@gmail.com]
**Sent:** Tuesday, November 20, 2012 2:20 PM
**To:** Shay Allen

Fwd Fwd 708-567-4367
Mike didnt do anything girl i just wanna see his ass rott in jail

Attachment VIII

Attachment IX

F.Y.I.

Civil No Contact Order 12OP50369

Petitioner: Patrycja Wlosik

Respondent: Michael O'Connor

RDOB: 6-14-90

Return Date: Monday, July 2, 2012 in courtroom 204 @1:30 p.m.

The petitioner is a classmate of the respondent not relationship at all. DePaul's Public Safety person Randy is aware of situation. (312)362-8344 as well as the Orland Police Department.

***Respondent has violated the order and was arrested on 6-15-12 after being served 6-11-12.

This case is up on July 9, 2012, in 103 at 9 a.m. Felony charge $75,000 d bond

Continue this case if possible until the 9th and then have it transferred and put the Civil No Contact order under the Felony case and dismiss Civil order number if possible. (CONFIRM FIRST WITH JUDGE AND FELONY State on the 2nd)

Pillars Case worker Christy Bowes is working with petitioner and her mother should be here for case if not contact her on 2nd with information (708)995-3664

7-9-12
11:00 AM

Released on bond June 30th

Attachment V

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC VIOLENCE DIVISION

PATRYCJA WLOSIK, )
)
Plaintiff, )
)
-vs- ) No. 12 OP 50369
)
MICHAEL O'CONNOR, )
)
Defendant. )

REPORT OF PROCEEDINGS had in the above-entitled matter before the Honorable Sheila McGinnis, Judge of said court, on the 22nd day of August, 2014, at the hour of 1:30 P.M.

PRESENT:

MS. PATRYCJA WLOSIK,
appeared pro se.

MR. SHAY ALLEN,
appeared on behalf of Defendant.

Elizabeth Ciszewski, OCR 084-002587 Bridgeview, Illinois

THE COURT: Mr. O'Connor, and good afternoon, counsel.

MR. ALLEN: Good afternoon, your Honor. Shay Allen, S-h-a-y, on behalf of Mr. Michael O'Connor who stands to my left in open court.

THE COURT: And at this point, there was a -- it looks like there was a plenary order of protection entered into by agreement back on July 9th of last year. It was until July 7th of this year, and then it has been extended to today, and at this point I know the petitioner is here and she would like to extend this order for a further period of time, is that correct?

MS. WLOSIK: Yes.

THE COURT: And have you talked to your client about an extension?

MR. ALLEN: I have, your Honor. He wishes to have the hearing.

THE COURT: All right. And so and again I guess then my question to you, Ms. Wlosik, prior to going forward with the hearing, do you want time to bring an attorney in or do you want to represent yourself? It's not a full blown hearing. We've already had that. You have to present some evidence as to why you need this extended.

MS. WLOSIK: I'll represent myself.

THE COURT: And then we can -- are you still waiting

for counsel?

(The matter was passed and recalled.)

THE CLERK: Recall Patrycja Wlosik and Michael O'Connor.

THE COURT: And did you have anyone else, Ms. Wlosik, that you are going to have testify or just yourself at this point?

MS. WLOSIK: Just myself.

MR. ALLEN: I would ask the other person that is standing here identify themselves as to what purpose she is standing there.

MS. BOWS: My name is Christie Bows. I work at a social service agency called Pillars. I'm an advocate.

THE COURT: Do you understand you have no legal standing? You are not allowed to address the court. You are simply here for support.

MS. BOWS: I understand. I'm simply here for support.

THE COURT: Do you have anyone else to testify?

MR. ALLEN: No.

THE COURT: Why don't we have everyone raise their hands to be sworn.

(The parties were first duly sworn.)

THE COURT: And again this order was entered into originally by agreement for a time period and it has been

extended. At this point the petitioner has made a motion asking to continue the order of protection for some period of time, and my first question, I guess, is, has there been any violations of this order of protection since it was entered?

MS. WLOSKI: Yes.

THE COURT: There have been contacts.

MS. WLOSIK: Yes, several. There was Facebook linked in. He came looking at DePaul for me and contacted me several times through letters.

THE COURT: When was the last time there was any contact of any type?

MS. WLOSIK: There was a letter on our last court date here, that was July 16th.

THE COURT: July 16th, you received a letter.

MS. WLOSIK: Yes.

THE COURT: From him. Do you have that letter here?

MS. WLOSIK: Yes.

THE COURT: Do you have other letters as well?

MS. WLOSIK: Yes.

THE COURT: How many letters have you received from Mr. O'Connor while this order of protection was in place?

MS. WLOSIK: About maybe four.

THE COURT: Four letters, and, counsel, have you had a

chance to see those?

MR. ALLEN: I have.

THE COURT: Any objection to the court seeing them?

MR. ALLEN: No.

THE COURT: And those letters were from what dates?

MS. WLOSIK: May 21st, May 28th, May 26th, or May 8th, and then July 16th.

THE COURT: And were any of those letters threatening in any way?

MS. WLOSIK: Yes.

THE COURT: Threatening harm?

MS. WLOSIK: Threatening myself or my boyfriend.

THE COURT: All right. Can you bring those up, Jean? And you say also that you became aware that Mr. O'Connor was actually at the DePaul campus looking for you.

MS. WLOSIK: Yes.

THE COURT: When did that occur?

MS. WLOSIK: Beginning of May when I received the messages from Facebook. I went to DePaul and I alert security that this has been a problem in the past. I have an order of protection and I just wanted them to have an extra eye of what was going on, and they actually told me that he came the day before and was looking for me.

THE COURT: Was that specifically asking to see you?

MS. WLOSIK: Yes.

THE COURT: Have you ever personally seen him around the DePaul campus as far as you are aware?

MS. WLOSIK: No.

THE COURT: And they are signed, Michael O'Connor. And again it appears that these letters were sent from Mr. O'Connor from the jail and, counsel, are you contesting that Mr. O'Connor sent any of these orders in violation of a no contact order.

MR. ALLEN: Your Honor, my basis of contest for those is that in a letter coming from the Cook County jail in an area where he is supposed to be under constant restriction and contact or monitoring, I don't understand how Mr. O'Connor could be held liable for sending something in which, from the Cook County jail, in which he is not supposed to be able to do. Cook County Jail is aware of this order of protection. Cook County Jail is aware of Mr. O'Connor's mental health issues. Cook County Jail is aware of who is listed on the order of protection. Why would Cook County Jail allow Mr. O'Connor --

THE COURT: That's a separate issue. That's a separate issue. And, Ms. Wlosik, have you ever seen Mr. O'Connor's writing before?

MS. WLOSIK: Yes.

THE COURT: Did you recognize this to be his writing and his drawings?

MS. WLOSIK: The drawings -- it's all a pattern of this from two years ago, so I recognized it right away.

THE COURT: And this is alarming to you obviously.

MS. WLOSIK: Yes.

THE COURT: And counsel, do you want to have your client testify or do you just want to argue? This right here gives me good cause, in my opinion, to extend this order to again for the maximum time of two years.

MR. ALLEN: I would like an opportunity to question the young lady about that.

THE COURT: Sure.

PATRYCJA WLOSIK,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

MR. ALLEN:

Q So you said Mr. O'Connor has come to DePaul looking for you, is that correct?

A Yes.

Q Do you know what dates that was?

A Beginning of May.

Q Do you have an exact date?

A No.

Q Has it been more than once?

A No, just once.

Q One time. And that one time he allegedly came to DePaul looking for you, were you on DePaul campus?

A Yes.

Q And do you remember being on DePaul campus?

A Yes.

Q Do you remember what time you found out that he allegedly came looking for you?

A It was about 10 o'clock.

Q In the morning?

A Yes.

Q And you were told this through someone else?

A Yes, through the DePaul security.

Q Do you know the name of that security?

A No.

Q Do you know how many were there, one officers, several or --

A There were two.

Q Two different security officers, right. And did they seek you out?

A No. I came and made them aware of this situation and they told me that he was there the day before.

Q So it just so happened the day -- you came one day and he had just been there the day before. But you never literally saw him, is that right?

A Correct.

Q And the order of protection had been in place for nearly two years before that, correct?

A Correct.

Q And in those two years you had not seen him, correct?

A Correct.

Q He had not called you or telephoned you?

A Correct.

Q You had not gotten any text messages from him, correct?

A No.

Q And I'm not going to ask you what your number is. But since the original incident of 2012, is your phone number different?

A Yes, correct.

Q Now in regards to Facebook postings, are you his friend on Facebook?

A He requested me, but I denied it.

Q So if you don't accept someone on Facebook, can you see what they write?

A It was filtered into my other messages. When I was checking my messages one day, I saw, other, and there was a 1, in parenthesis. I saw the name Mike Jones and that is how it started, and I know I don't know a Mike Jones.

Q So if you see someone you don't know, then you look at the message?

A Well, I wanted to see who it was.

Q And after seeing one message you say of Mike Jones, after that first message you saw, did that first message indicate it was from Michael O'Connor?

A The first one didn't. It said I know of a friend. He really wants to talk with you, and, you know, that was just really weird for me, and I got scared, and I took action to try to ignore it. But then the second one said his full name and that's when I made the report.

Q Now with regard to the report, do you mean a report to the police?

A Yes.

Q And that report was made to the Chicago Police Department?

A Yes.

Q Is there any reason why the report was made to the Chicago Police Department and not the Orland Park Police Department?

A I was looking at some messages from school and it happened in Chicago as well, so I just asked there, and to quickly take initiative right away, and I wanted this to be taken care of because I still had my order of protection and I was scared to go to school.

Q Your allegation -- your actual petition alleged that there was physical abuse. Has there ever been any physical abuse?

A No.

Q It alleges that there has been an interference with, excuse me, physical liberty. How does, for instance, the messages on Facebook interfere with your physical liberty?

A I'm sorry. What does physical liberty mean?

Q I don't know. It's on your petition. That is what I'm asking you, who put that there. Interference with physical liberty. Do you know what that means?

A No.

Q Did you fill out the original petition or the original order of protection?

A I'm sorry. I don't remember.

THE CLERK: Judge, just for clarification, this is a stalking, no contact order.

THE COURT: Yes, it is.

THE CLERK: And I don't believe that language is on the petition.

MR. ALLEN: I think that it is on the petition. I was just reading it from the original petition.

THE COURT: And it is in the body of the petition. There are incidents listing verbal abuse, physical abuse, sexual harrasment, exploitation, stalking, threatening, intimidation of a dependent, interference with personal liberty, willful deprivation. I'm not sure if this was filled out by you, Ms. Wlosik, or not. But that was the allegations in the initial petition. But at this point we are beyond that. What it is now is I am determining whether or not there is good cause to extend this order from this point on.

MR. ALLEN:

Q From the time that the initial order was entered and within the time period that you reached the Chicago Police Department, had you reached out and contacted Mr. O'Connor?

A No.

Q Have you reached out or contacted him through a third party at all?

A No.

Q Have you spoken about him with a third party, for

instance, a friend?

A Yes.

Q Have you ever spoken to him -- about Mr. O'Connor with Joey Castro's girlfriend?

A I don't know who that is, so no.

Q On one incident in particular, there was only a friend request on the weekend, correct?

A No. It was -- it was just a notification that Michael O. was looking at your profile. There was no request; but it happened when Facebook was going on, the DePaul and the letters, and Michael O. I assumed it was Michael O'Connor.

Q But you didn't know for sure if it was Michael O'Connor?

A Correct. It didn't say O'Connor but --

Q Now, and finally, the letters you received, when you received those letters, you were aware that they were from the Cook County jail?

A Yes.

Q You were aware --

A They were sent from the jail.

Q What's that?

A They were under like unit -- I don't have the letters in front of me. But --

Q And after seeing they were from the jail, you opened the letters at that point?

A One of them was for my father and there was a cross on the back, and my mom got the mail, and she opened it up, and she said, you know, is this from someone from church writing it? So she started reading it with my father and, you know, that's when more letters started filtering in.

Q Does your father work for Orland Park Police Department?

A No.

MR. ALLEN: I have nothing further.

THE COURT: All right. And you rest on your motion to extend the order of protection.

MS. WLOSIK: Yes, ma'am.

THE COURT: Counsel, do you wish to present any evidence?

MR. ALLEN: No, your Honor.

THE COURT: At this point, based on what I've heard and the letters that I have seen, I mean, this is a no contact order of protection, Mr. O'Connor. That means no contact by any means whatsoever, not in person, no phone calls, no e-mails, text messages, cards, letters, no communication over the Internet. Don't have anybody else trying to

contact her on your behalf. You stay away from any address that is in this order. You cannot be on the property. You can't be in the immediate area. And because you have violated this order and sent at least four letters and tried to reach out to her at school and reach out to her through Facebook, I do find that there is a substantial cause to extend this order, and this order is going to be extended until August 20th of 2016.

So at this point for another two years you have absolutely no contact by any means with Ms. Wlosik. Do you understand that, sir?

MR. O'CONNOR: Yes, your Honor.

THE COURT: I'll return these. I don't know if you want these back. You may want to hold onto them. Put them away in a file. But -- so it's her school, place of employment. You are not to go near her by any means whatsoever, and you are not to contact her by any means whatsoever. Do you understand that?

MR. O'CONNOR: Yes.

THE COURT: And again it will be in place until August 20, 2016.

Counsel, I'm signing that order now, the extension on the order. Will you acknowledge receipt of the order on behalf of your client?

MR. ALLEN: I will.

THE COURT: You will get a stamped copy in just a moment.

MR. ALLEN: Your Honor, finally, I apologize. So the basis of the extension, is it mostly the letters? You said the letters.

THE COURT: The letters, the Facebook contact, and the contact at school, but mostly the letters. I mean, obviously they are signed by him. They reference Patrycja. There are numerous letters. He was not supposed to have any contact. That's the order. That's contact. I'm surprised he was not charged, four times. He could have been charged with four separate misdemeanors with regard to each one of those, and then once we prove one of those up, now we go into the felony room.

So at this point I can't admonish you enough, Mr. O'Connor, no contact means no contact whatsoever; and those letters obviously, I think that is very good cause to extend this order, and the letters themselves. I didn't read them out in the court. If you would like me to, I will. They are very disturbing.

MR. ALLEN: Well, they are. My client didn't --

THE COURT: Exactly. So that is why this order is necessary, counsel, to protect Ms. Wlosik. So the order is

in place for another two years.

MR. ALLEN: Thank you.

THE COURT: You could have a seat. You will get a copy of the order as well.

(Which were all the proceedings had.)

PROFILE INFORMATION FORM

Please fill out and return this form along with any other pleading you wish to submit to the court. It is your responsibility to keep the court advised of your current address in order for you to receive orders from the court. Failure to do so may result in dismissal of your case for want of prosecution. Once the Prisoner Correspondent records this information, this form will be destroyed.

**PLEASE PRINT**

1. Name: Michael Wolf O'Connor
   (First) (Middle) (Last)

   List Alias Names, if any: ______

2. Any Current/Prior Prison ID Number(s): 2014 05 09 336

   Name of Prison(s): Cook County Jail

3. Jail ID Number(s): 2014 05 09 336

   Name of Jail(s): ______

4. Date of Birth: 6/18/1990

5. Home Address (Do not use P.O. Box) (Not Institution address):

   Street Name and Number: 10732 S. Seeley Ave.

   City, State and Zip Code: Chicago, IL 60643

Reviewed 1/16/14

contact her on your behalf. You stay away from any address that is in this order. You cannot be on the property. You can't be in the immediate area. And because you have violated this order and sent at least four letters and tried to reach out to her at school and reach out to her through Facebook, I do find that there is a substantial cause to extend this order, and this order is going to be extended until August 20th of 2016.

So at this point for another two years you have absolutely no contact by any means with Ms. Wlosik. Do you understand that, sir?

MR. O'CONNOR: Yes, your Honor.

THE COURT: I'll return these. I don't know if you want these back. You may want to hold onto them. Put them away in a file. But -- so it's her school, place of employment. You are not to go near her by any means whatsoever, and you are not to contact her by any means whatsoever. Do you understand that?

MR. O'CONNOR: Yes.

THE COURT: And again it will be in place until August 20, 2016.

Counsel, I'm signing that order now, the extension on the order. Will you acknowledge receipt of the order on behalf of your client?

MR. ALLEN: I will.

THE COURT: You will get a stamped copy in just a moment.

MR. ALLEN: Your Honor, finally, I apologize. So the basis of the extension, is it mostly the letters? You said the letters.

THE COURT: The letters, the Facebook contact, and the contact at school, but mostly the letters. I mean, obviously they are signed by him. They reference Patrycja. There are numerous letters. He was not supposed to have any contact. That's the order. That's contact. I'm surprised he was not charged, four times. He could have been charged with four separate misdemeanors with regard to each one of those, and then once we prove one of those up, now we go into the felony room.

So at this point I can't admonish you enough, Mr. O'Connor, no contact means no contact whatsoever; and those letters obviously, I think that is very good cause to extend this order, and the letters themselves. I didn't read them out in the court. If you would like me to, I will. They are very disturbing.

MR. ALLEN: Well, they are. My client didn't --

THE COURT: Exactly. So that is why this order is necessary, counsel, to protect Ms. Wlosik. So the order is

in place for another two years.

MR. ALLEN: Thank you.

THE COURT: You could have a seat. You will get a copy of the order as well.

(Which were all the proceedings had.)

Attachment V

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC VIOLENCE DIVISION

PATRYCJA WLOSIK, )
)
Plaintiff, )
)
-vs- ) No. 12 OP 50369
)
MICHAEL O'CONNOR, )
)
Defendant. )

REPORT OF PROCEEDINGS had in the above-entitled matter before the Honorable Sheila McGinnis, Judge of said court, on the 22nd day of August, 2014, at the hour of 1:30 P.M.

PRESENT:

MS. PATRYCJA WLOSIK,
appeared pro se.

MR. SHAY ALLEN,
appeared on behalf of Defendant.

Elizabeth Ciszewski, OCR 084-002587 Bridgeview, Illinois

THE COURT: Mr. O'Connor, and good afternoon, counsel.

MR. ALLEN: Good afternoon, your Honor. Shay Allen, S-h-a-y, on behalf of Mr. Michael O'Connor who stands to my left in open court.

THE COURT: And at this point, there was a -- it looks like there was a plenary order of protection entered into by agreement back on July 9th of last year. It was until July 7th of this year, and then it has been extended to today, and at this point I know the petitioner is here and she would like to extend this order for a further period of time, is that correct?

MS. WLOSIK: Yes.

THE COURT: And have you talked to your client about an extension?

MR. ALLEN: I have, your Honor. He wishes to have the hearing.

THE COURT: All right. And so and again I guess then my question to you, Ms. Wlosik, prior to going forward with the hearing, do you want time to bring an attorney in or do you want to represent yourself? It's not a full blown hearing. We've already had that. You have to present some evidence as to why you need this extended.

MS. WLOSIK: I'll represent myself.

THE COURT: And then we can -- are you still waiting

for counsel?

(The matter was passed and recalled.)

THE CLERK: Recall Patrycja Wlosik and Michael O'Connor.

THE COURT: And did you have anyone else, Ms. Wlosik, that you are going to have testify or just yourself at this point?

MS. WLOSIK: Just myself.

MR. ALLEN: I would ask the other person that is standing here identify themselves as to what purpose she is standing there.

MS. BOWS: My name is Christie Bows. I work at a social service agency called Pillars. I'm an advocate.

THE COURT: Do you understand you have no legal standing? You are not allowed to address the court. You are simply here for support.

MS. BOWS: I understand. I'm simply here for support.

THE COURT: Do you have anyone else to testify?

MR. ALLEN: No.

THE COURT: Why don't we have everyone raise their hands to be sworn.

(The parties were first duly sworn.)

THE COURT: And again this order was entered into originally by agreement for a time period and it has been

extended. At this point the petitioner has made a motion asking to continue the order of protection for some period of time, and my first question, I guess, is, has there been any violations of this order of protection since it was entered?

MS. WLOSKI: Yes.

THE COURT: There have been contacts.

MS. WLOSIK: Yes, several. There was Facebook linked in. He came looking at DePaul for me and contacted me several times through letters.

THE COURT: When was the last time there was any contact of any type?

MS. WLOSIK: There was a letter on our last court date here, that was July 16th.

THE COURT: July 16th, you received a letter.

MS. WLOSIK: Yes.

THE COURT: From him. Do you have that letter here?

MS. WLOSIK: Yes.

THE COURT: Do you have other letters as well?

MS. WLOSIK: Yes.

THE COURT: How many letters have you received from Mr. O'Connor while this order of protection was in place?

MS. WLOSIK: About maybe four.

THE COURT: Four letters, and, counsel, have you had a

chance to see those?

MR. ALLEN: I have.

THE COURT: Any objection to the court seeing them?

MR. ALLEN: No.

THE COURT: And those letters were from what dates?

MS. WLOSIK: May 21st, May 28th, May 26th, or May 8th, and then July 16th.

THE COURT: And were any of those letters threatening in any way?

MS. WLOSIK: Yes.

THE COURT: Threatening harm?

MS. WLOSIK: Threatening myself or my boyfriend.

THE COURT: All right. Can you bring those up, Jean? And you say also that you became aware that Mr. O'Connor was actually at the DePaul campus looking for you.

MS. WLOSIK: Yes.

THE COURT: When did that occur?

MS. WLOSIK: Beginning of May when I received the messages from Facebook. I went to DePaul and I alert security that this has been a problem in the past. I have an order of protection and I just wanted them to have an extra eye of what was going on, and they actually told me that he came the day before and was looking for me.

THE COURT: Was that specifically asking to see you?

MS. WLOSIK: Yes.

THE COURT: Have you ever personally seen him around the DePaul campus as far as you are aware?

MS. WLOSIK: No.

THE COURT: And they are signed, Michael O'Connor. And again it appears that these letters were sent from Mr. O'Connor from the jail and, counsel, are you contesting that Mr. O'Connor sent any of these orders in violation of a no contact order.

MR. ALLEN: Your Honor, my basis of contest for those is that in a letter coming from the Cook County jail in an area where he is supposed to be under constant restriction and contact or monitoring, I don't understand how Mr. O'Connor could be held liable for sending something in which, from the Cook County jail, in which he is not supposed to be able to do. Cook County Jail is aware of this order of protection. Cook County Jail is aware of Mr. O'Connor's mental health issues. Cook County Jail is aware of who is listed on the order of protection. Why would Cook County Jail allow Mr. O'Connor --

THE COURT: That's a separate issue. That's a separate issue. And, Ms. Wlosik, have you ever seen Mr. O'Connor's writing before?

MS. WLOSIK: Yes.

THE COURT: Did you recognize this to be his writing and his drawings?

MS. WLOSIK: The drawings -- it's all a pattern of this from two years ago, so I recognized it right away.

THE COURT: And this is alarming to you obviously.

MS. WLOSIK: Yes.

THE COURT: And counsel, do you want to have your client testify or do you just want to argue? This right here gives me good cause, in my opinion, to extend this order to again for the maximum time of two years.

MR. ALLEN: I would like an opportunity to question the young lady about that.

THE COURT: Sure.

PATRYCJA WLOSIK,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

MR. ALLEN:

Q So you said Mr. O'Connor has come to DePaul looking for you, is that correct?

A Yes.

Q Do you know what dates that was?

A Beginning of May.

Q Do you have an exact date?

A No.

Q Has it been more than once?

A No, just once.

Q One time. And that one time he allegedly came to DePaul looking for you, were you on DePaul campus?

A Yes.

Q And do you remember being on DePaul campus?

A Yes.

Q Do you remember what time you found out that he allegedly came looking for you?

A It was about 10 o'clock.

Q In the morning?

A Yes.

Q And you were told this through someone else?

A Yes, through the DePaul security.

Q Do you know the name of that security?

A No.

Q Do you know how many were there, one officers, several or --

A There were two.

Q Two different security officers, right. And did they seek you out?

A No. I came and made them aware of this situation and they told me that he was there the day before.

Q So it just so happened the day -- you came one day and he had just been there the day before. But you never literally saw him, is that right?

A Correct.

Q And the order of protection had been in place for nearly two years before that, correct?

A Correct.

Q And in those two years you had not seen him, correct?

A Correct.

Q He had not called you or telephoned you?

A Correct.

Q You had not gotten any text messages from him, correct?

A No.

Q And I'm not going to ask you what your number is. But since the original incident of 2012, is your phone number different?

A Yes, correct.

Q Now in regards to Facebook postings, are you his friend on Facebook?

A He requested me, but I denied it.

Q So if you don't accept someone on Facebook, can you see what they write?

A It was filtered into my other messages. When I was checking my messages one day, I saw, other, and there was a 1, in parenthesis. I saw the name Mike Jones and that is how it started, and I know I don't know a Mike Jones.

Q So if you see someone you don't know, then you look at the message?

A Well, I wanted to see who it was.

Q And after seeing one message you say of Mike Jones, after that first message you saw, did that first message indicate it was from Michael O'Connor?

A The first one didn't. It said I know of a friend. He really wants to talk with you, and, you know, that was just really weird for me, and I got scared, and I took action to try to ignore it. But then the second one said his full name and that's when I made the report.

Q Now with regard to the report, do you mean a report to the police?

A Yes.

Q And that report was made to the Chicago Police Department?

A Yes.

Q Is there any reason why the report was made to the Chicago Police Department and not the Orland Park Police Department?

A I was looking at some messages from school and it happened in Chicago as well, so I just asked there, and to quickly take initiative right away, and I wanted this to be taken care of because I still had my order of protection and I was scared to go to school.

Q Your allegation -- your actual petition alleged that there was physical abuse. Has there ever been any physical abuse?

A No.

Q It alleges that there has been an interference with, excuse me, physical liberty. How does, for instance, the messages on Facebook interfere with your physical liberty?

A I'm sorry. What does physical liberty mean?

Q I don't know. It's on your petition. That is what I'm asking you, who put that there. Interference with physical liberty. Do you know what that means?

A No.

Q Did you fill out the original petition or the original order of protection?

A I'm sorry. I don't remember.

THE CLERK: Judge, just for clarification, this is a stalking, no contact order.

THE COURT: Yes, it is.

THE CLERK: And I don't believe that language is on the petition.

MR. ALLEN: I think that it is on the petition. I was just reading it from the original petition.

THE COURT: And it is in the body of the petition. There are incidents listing verbal abuse, physical abuse, sexual harrasment, exploitation, stalking, threatening, intimidation of a dependent, interference with personal liberty, willful deprivation. I'm not sure if this was filled out by you, Ms. Wlosik, or not. But that was the allegations in the initial petition. But at this point we are beyond that. What it is now is I am determining whether or not there is good cause to extend this order from this point on.

MR. ALLEN:

Q From the time that the initial order was entered and within the time period that you reached the Chicago Police Department, had you reached out and contacted Mr. O'Connor?

A No.

Q Have you reached out or contacted him through a third party at all?

A No.

Q Have you spoken about him with a third party, for

instance, a friend?

A Yes.

Q Have you ever spoken to him -- about Mr. O'Connor with Joey Castro's girlfriend?

A I don't know who that is, so no.

Q On one incident in particular, there was only a friend request on the weekend, correct?

A No. It was -- it was just a notification that Michael O. was looking at your profile. There was no request; but it happened when Facebook was going on, the DePaul and the letters, and Michael O. I assumed it was Michael O'Connor.

Q But you didn't know for sure if it was Michael O'Connor?

A Correct. It didn't say O'Connor but --

Q Now, and finally, the letters you received, when you received those letters, you were aware that they were from the Cook County jail?

A Yes.

Q You were aware --

A They were sent from the jail.

Q What's that?

A They were under like unit -- I don't have the letters in front of me. But --

Q And after seeing they were from the jail, you opened the letters at that point?

A One of them was for my father and there was a cross on the back, and my mom got the mail, and she opened it up, and she said, you know, is this from someone from church writing it? So she started reading it with my father and, you know, that's when more letters started filtering in.

Q Does your father work for Orland Park Police Department?

A No.

MR. ALLEN: I have nothing further.

THE COURT: All right. And you rest on your motion to extend the order of protection.

MS. WLOSIK: Yes, ma'am.

THE COURT: Counsel, do you wish to present any evidence?

MR. ALLEN: No, your Honor.

THE COURT: At this point, based on what I've heard and the letters that I have seen, I mean, this is a no contact order of protection, Mr. O'Connor. That means no contact by any means whatsoever, not in person, no phone calls, no e-mails, text messages, cards, letters, no communication over the Internet. Don't have anybody else trying to

contact her on your behalf. You stay away from any address that is in this order. You cannot be on the property. You can't be in the immediate area. And because you have violated this order and sent at least four letters and tried to reach out to her at school and reach out to her through Facebook, I do find that there is a substantial cause to extend this order, and this order is going to be extended until August 20th of 2016.

So at this point for another two years you have absolutely no contact by any means with Ms. Wlosik. Do you understand that, sir?

MR. O'CONNOR: Yes, your Honor.

THE COURT: I'll return these. I don't know if you want these back. You may want to hold onto them. Put them away in a file. But -- so it's her school, place of employment. You are not to go near her by any means whatsoever, and you are not to contact her by any means whatsoever. Do you understand that?

MR. O'CONNOR: Yes.

THE COURT: And again it will be in place until August 20, 2016.

Counsel, I'm signing that order now, the extension on the order. Will you acknowledge receipt of the order on behalf of your client?

MR. ALLEN: I will.

THE COURT: You will get a stamped copy in just a moment.

MR. ALLEN: Your Honor, finally, I apologize. So the basis of the extension, is it mostly the letters? You said the letters.

THE COURT: The letters, the Facebook contact, and the contact at school, but mostly the letters. I mean, obviously they are signed by him. They reference Patrycja. There are numerous letters. He was not supposed to have any contact. That's the order. That's contact. I'm surprised he was not charged, four times. He could have been charged with four separate misdemeanors with regard to each one of those, and then once we prove one of those up, now we go into the felony room.

So at this point I can't admonish you enough, Mr. O'Connor, no contact means no contact whatsoever; and those letters obviously, I think that is very good cause to extend this order, and the letters themselves. I didn't read them out in the court. If you would like me to, I will. They are very disturbing.

MR. ALLEN: Well, they are. My client didn't --

THE COURT: Exactly. So that is why this order is necessary, counsel, to protect Ms. Wlosik. So the order is

in place for another two years.

MR. ALLEN: Thank you.

THE COURT: You could have a seat. You will get a copy of the order as well.

(Which were all the proceedings had.)

Attachment IX

RECEIVED MAY 11 2015 Office of the State Appellate Defender 1ST DISTRICT

4/17/2015

Re: People v. Michael W. O'Connor
Cook County No. 12 CR 12678
Appellate Court No. 1-15-0524

Dear Mr. Goldberg,

Thank you for your letter dated April 23,2015.

My son and ward, Michael W. O'Connor, appealed his guilty plea of February 13, 2013, which he entered in Judge Hynes' Court, due to extreme circumstances (i.e. torture and deliberate lack of treatment for his mental disabilities), since the beginning of February, 2013. Michael appealed , also, due to the inefficient legal advise of his legal defense counsel, in the form of Motions addressed to Judge Hynes, to the Presiding Judge of Bridgeview Court, to Judge Timothy Evans, and to the Appellate Court, since the beginning of March, 2013 – see attached documents.

In your letter, you mention "a number of petitions for violation of probation", without specifying what petitions for what violations. It seems to me that you have been misinformed. My son has been framed to violate his probation twice:

Even though he failed to provide my son with efficient legal defense, my son's legal defense lawyer himself mentioned, several times, that Judge Hynes refused to order and to support my son's much needed rehabilitation services, resorting, instead, to send him to Lake Villa, for a couple of weeks, and to consider him ready to be sent home, after April, 2013.Thus, my son was purposefully set up for "a life sentence". He was extremely injured in CCDOC Maximum Security jail, and, upon his release for Probation, he acquired, due to brutal assault that left him almost dead, PTSD and TBI. He was not able to cope with these new diagnoses, and he smoked marijuana ONCE. His addiction, which was due to his Bipolar disability, was now considerably aggravated by his new PTSD and TBI untreated symptoms. Unlike Judge Hynes, who, even after five CCDOC psychiatrists diagnosed Michael with Bipolar disorder, still stated, in his open Court, "He is just fooling all of us", Honorable Judge Amy St. Ives stated, in an FMLA case we won two days before Michael was arrested, in June 2012, that Michael "is primarily Bipolar", even if he is an addict. Because he tested positive for marijuana ONCE, Judge Hynes sent him to jail, for an indefinite amount of time. With the help of neighbors, parents from St. Barnabas parish, who know, disagree with, and are very afraid of Judge Hynes, I bonded my son out, for $15,000, but

8/15/2014

**To the Attention of the Appellate Court**

I, Valentina L. O'Connor, mother, next of kin and Plenary Guardian of Michael W. O'Connor, who is detained in Cook County Department of Corrections (I.D. #: 20140509336), respectfully bring to your attention the following reasons for appealing Mr. J. Dillon's decision to indict my son:

1. The state failed to produce a probable cause, beyond a reasonable doubt, that Michael met the "Cyber-Stalking" definition, i.e., Michael never posed any threat, nor made any threat, nor has he ever been violent, nor has he ever harmed anyone, nor has the state ever, since the inception of this color of crime case, examined Michael's achievements, social status, and prospects to develop within society. Michael has been an excellent student, son, and member of the community at the St. Barnabas school and in our St. Barnabas Parish, at Mount Carmel High School, where Michael started his career in being a published writer, at DePaul University, where Michael was a senior student, one year away from graduating with a B.A. in Communications.

2. These charges are concurrent, which is against the "one act, one crime" rule.

3. The "victim" never pressed charges, but other individuals who demonstrated a constant desire to personally destroy Michael, pressed these charges.

4. The No Contact Order that, assumingly, Michael violated, is a Civil Order, and Michael should not be charged with criminal charges in connection with this order.

5. The "victim" demonstrates the unconstitutionality of the charges against Michael by her own statements, in text messages and in different postings on social media: "Michael did not do anything to me, I just wanted to see his ass rot in jail", or "Say my name, call

me right now, I miss you, I love you so much, it was not me, but someone else who snooped through my things, who turned you into the police", etc.

6. The legal defense was adverse to Michael's defense, since it allied with the prosecutor (they are friends, I was told by other lawyers), instigated, conspired, and supported damaging slandering and unconstitutional actions against Michael at DePaul University, after he obtained Michael's signature to access Michael's school records, which, he said, it was only to show the Judge that Michael is in very good standing, has excellent grades,etc. This resulted in Michael being re-arrested on October 18, 2012, two days before he was going to unveil the "victim's" plagiarism from Michael's papers.

The second defense attorney , after having been paid by me a handsome retaining fee (all my remaining pension savings), has been given Michael's Bond money, without my knowledge, and he never showed up again to defend Michael, after the only two Court appearances he made initially.

7. The "victim" used to entrap Michael, by the Orland Park Police, before and after Michael and I filed a Complaint in the Federal Court against the Orland Park police who violated Michael's constitutional rights by arresting him without a warrant; by taping his private conversations without a warrant for a month; by refusing to allow Michael to have a lawyer (who was waiting to assist Michael); by using excessive force against Michael; and refusing to medicate Michael with his needed medications for his Bipolar Psychosis, ADHD, and hypothyroidism; by coercing Michael into a confession that they wrote, and had Michael sign it; by telling Michael that there will be no charges, that they will allow him to catch the train to make his class at DePaul; and by reading the Miranda Rights to Michael only after they had him sign the confession that they wrote.

The Orland Park police also framed Michael in connection with the CCDOC to be almost fatally beaten by a gang member, in Division 10 for the Criminally Insane, where they placed Michael, with the state's conspiracy and revenge (because I called the DA office to tell the prosecutor that Michael is mentally ill,"She got mad", said the sheriff who told Michael that he will go not into the general population, but to the Maximum Security Division 10), the Orland Park police and the state, conspiring to throw Michael in prison "for a long time", re-arrested Michael while he was in Division 10, and had Michael's cellmate be informed that the reason why Michael was taken out for 24 hours, was to "rat" on him, after which this inmate almost killed Michael in a brutal assault.

The assault was also due to Michael's excessive bail and unusual punishment: Michael's bond was "No Bond" or $1,350,000, while "killers" in Maximum Security had a bond of approximately $100,000. They did not believe Michael when he told them of what he was accused, and they treated Michael as a sex offender(V. S. P.).

8. Michael was not medicated for a total of more than thirty two days, until he reached the symptomatic stage of his mental illness, and the Orland Park police, together with the prosecutor and a biased judge (who refused to even look at the discoveries that would have proved Michael's charges unconstitutional, and who accepted the "fruit of the poisoned tree" evidence of the State) conspired to have Michael re-arrested four consecutive times, including when Michael was on bond and did not commit any trespass against his probation for concurrent sentences.

9. Michael was pushed into a wrongful conviction by his lack of treatment for his mental illness, and by having been assaulted repeatedly, and he did follow the wrong legal advise of a legal defense who worked against him, yet took all my money.

10. Michael has been detained in harsh conditions for over 265 days, without being allowed to have a trial.

11. Michael has been constantly oppressed, tortured, violated in his constitutional rights, e.g., his right to a speedy trial, his right to be left alone and not intruded upon; spied upon in his private conversations; his right to have a probable cause beyond a reasonable doubt (it was the "victim"s father who, with impunity, dictated the tone of Michael's abuse by the state actors in this color of crime case: he stated, "If he (Michael) is crazy, he might do something to my daughter", and the "victim's" mother stated, "Michael might bring a gun to school",etc.

12. Michael has been excessively and cruelly punished for exerting his Freedom of Speech, i.e., Michael wrote Love poems to the "victim" and used metaphorical language, containing no threatening statements, like the malicious and revengeful prosecution stated, by taking words out of their context within the paragraphs, or by, maliciously and incorrectly, interpreting that, at the end of a paragraph in which Michael describes his disappointment with the "victim's" manipulations and bullying of Michael, he states, "F... You", which is interpreted by the prosecution as " this can be construed as a specific threat of sexual assault"; and declaring Michael, despite his expert witness testimony that Michael has not been and he is not a danger to society, still the malicious prosecutor, mocking the expert witness and Michael's disabilities (his well-documented Bipolarity and ADHD) stated, "Judge, he is a danger to society and he should be locked up" in Maximum Security jail with No Bond.

13. As of 8/17/2014, Michael is still in Maximum Security, Solitary Confinement (which is cruel and unusual, as per the Supreme Court Justices, especially in someone like

Michael's case, who suffers from Bi-Polar disease and from extreme depression, anxiety, is suicidal, has numerous injuries caused by his repeated assaults by the state actors; used by the "victim's" father for his own interest; and against whom the state used excessive force, assaults, death threats, and coercion, to push him into a wrongful conviction); put him in CCDOC, Division 10, with No Bond and extremely hurt (see attached discoveries), with broken bones, PTSD, TBI, head concussions, suicidal ideation, extreme anxiety (due to the assault he suffered in the Bond Court, on May, 9th, 2014, when, unmedicated for a week, after his sixth arrest, despite the fact that I insisted on handing all Michael's medication to the police, and explained to them that Michael absolutely needs them, to avoid him being hurt. The police who arrested Michael on 5/05/2014 did not medicate and then mis-medicated Michael the night before court also). Michael that morning stated in court, "No, no, no!" to the three more criminal charges that the prosecutor was reading against him. In the presence of the Bond Court Judge and in front of the people in the Court, then, Michael was knocked on his head, trampled down, knocked in his face (which resulted in breaking his nose and distorting his facial features), then dragged by the Judge's chambers, in the hallway, and, while handcuffed with his hands in the back. Four sheriffs kicked him in the face, head, body, until they left him twice unconscious, in blunt trauma, not breathing, with dislocated vertebrae, head concussions, broken teeth, maxillary, knee, bleeding from his face, head, and nose. When he stopped breathing an ambulance was called and he was brought to Mount Sinai Hospital. The same sheriffs continue to make death threats to Michael and to press more charges on him, by entrapping him, charging him with three more criminal charges - seven up to this date - and pretending that Michael hurt them.

Attachment X

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, | ) | |
| -vs- | ) | No. 12 CR 12678 |
| MICHAEL O'CONNOR, Defendant. | ) | |

REPORT OF PROCEEDINGS had in the above-entitled matter before the Honorable John Joseph Hynes, Judge of said court, on the 17th day of October, 2014, at the hour of 11:30 a.m.

PRESENT:

HON. ANITA M. ALVAREZ,
STATE'S ATTORNEY, COOK COUNTY,
MS. CHERYL GALVIN,
ASSISTANT STATE'S ATTORNEY,
appeared on behalf of Plaintiff;

MR. SHAY ALLEN,
appeared on behalf of Defendant.

Elizabeth Ciszewski, OCR 084-002587 Bridgeview, Illinois

JC ok
10-24-14

ELIZABETH CISZEWSKI, OCR

10220 W. 76th Avenue, Room 058

Bridgeview, IL

| DATE | CASE |
| --- | --- |
| 10-17-14 | People vs. Michael O'Connor, 12 CR 12678 Judge Hynes |

5 pgs. at $3.15 per pg. $ 15.75

Name: Valentia O'Connor

Phone: 1-773-238-0680

Pd $15.75 10-27-14

EK

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, MUNICIPAL DIVISION

I, Elizabeth Ciszewski, an official court reporter for the Circuit Court of Cook County, County Department, Criminal/Municipal Division, Illinois, do hereby certify that I reported in shorthand the evidence had in the above-entitled cause and that the foregoing is a true and correct transcript to the best of my ability of all the proceedings had.

Official Court Reporter,
No. 084-002587

Dated this 24th day of Octob, 2014 AD.

THE CLERK: Michael O'Connor, probation.

THE COURT: All right. This is Michael O'Connor. Counsel.

MR. ALLEN: Yes, your Honor. My name is Shay Allen, S-h-a-y, on behalf of Mr. Michael O'Connor.

THE COURT: All right. First piece of business here is it looks like the defendant's mother tried to file a notice of appeal on any bond issue here and she also filed -- is this from her too today?

MR. ALLEN: I became aware of it afterwards, your Honor.

THE COURT: All right. You are not adopting this, are you?

MR. ALLEN: Your Honor, I am not adopting the motion. I explained to Ms. O'Connor that --

THE COURT: All right. The motion filed by Valenti O'Connor is stricken. The notice of appeal filed by Valenti O'Connor is stricken, and Ms. O'Connor is here, and I'm going to admonish you right now, you file any other motions in this case -- your attorney is the attorney of record. You file any other motions in this case, you are in direct criminal contempt of court, and you will be looking at jail time. Do you understand that?

MS. O'CONNOR: Sir --

THE COURT: Do you understand that?

MS. O'CONNOR: I do understand.

THE COURT: That's it.

MS. O'CONNOR: I have the right to file a motion.

THE COURT: You do not have the right to file a motion and you are going to be held in contempt right now.

(Discussion had between Ms. O'Connor and counsel off the record.)

THE COURT: All right. What is the status of the other cases and this case, State?

MS. GALVIN: Judge, as of now, the other cases have been elected. With respect to that matter, the defense attorney has had the defendant BCXed for several reasons including fitness to stand trial, sanity. I have confirmed with Mr. Allen as well as the TASC representative that they were contacted by forensic clinical services who wanted additional information in order to finish that report on those matters. Apparently, there was a return on the fitness to stand trial, however, based on the judge, Judge Higgins, she wanted a second evaluation or a re-evaluation done, so they are waiting for that to come back. The next court date is 10/21. In addition, counsel has hired a private psychiatrist to have the defendant evaluated for those same reasons.

MR. ALLEN: That's correct, your Honor.

THE COURT: All right. Do we have any idea of the time table on all of that?

MR. ALLEN: Everything should be done very soon, your Honor. Both processes are well under way, so I'm just asking for November 7th.

THE COURT: I can't do it then. We are looking at December 5th, 12th, something like that.

MR. ALLEN: If that's the earliest, your Honor, December 5th.

THE COURT: All right. By agreement, December 5th.

(Which were all the proceedings had.)

5th District (Court Branch) (Court Date)

Felony

(3/14/05) CCCR 0662

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of the State of Illinois
Plaintiff

v.

Michael W O'Connor
Defendant

COMPLAINT FOR PRELIMINARY EXAMINATION

No. 12 5 4124

Patrycja R Wlosik
(Complainant's Name Printed or Typed) complainant, now appears before The Circuit Court of Cook County and states that

Michael W O'Connor (Defendant) 10732 S Seeley Ave Chicago IL (Address) has, on or about 06-09-12 (Date) at 11635 Burnley Dr Orland Park Cook County IL (Place of offense)

committed the offense of Cyberstalking in that s/he knowingly and without lawful justification on at least 2 separate occasions harassed the victim through the use of electronic communication and transmitted a threat of sexual assault.

COPY

in violation of 720 (Chapter) ILCS 5 (Act) 12-7.5(a)(1) (Section)

CHARGE CODE

Det Rossi #46 - in care of Patrycja Wlosik
(Complainant's Signature)

STATE OF ILLINOIS
COOK COUNTY

ss. 10220 S. 76th Ave., Bridgeview, IL

11635 Burnley Dr, Orland Park, IL 60462
(Complainant's Address) (Telephone No.)

Patrycja R Wlosik
(Complainant's Name Printed or Typed)

being first duly sworn, Patrycja R Wlosik on oath, deposes and says that s/he read the foregoing complaint by him/her subscribed and that the same is true.

Det Rossi #46 -- in care of Patrycja Wlosik
(Complainant's Signature)

Subscribed and sworn to before me June 14, 2012

Dorothy Brown [signature] clerk
(Judge or Clerk)

I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there is probable cause for filing same. Leave is given to file said complaint.

Summons issued, or Warrant Issued, or Bail set at

Judge

Bail set at, Judge's No.

Judge

Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

Copy Distribution - 1. ORIGINAL - COURT FILE 2. DEFENDANT'S COPY 3. COOK COUNTY DOC COPY

Attachment XIII

RUN DATE: 05/14/14
RUN TIME: 1213
RUN USER: TORKIM

SHS Emergency Department *LIVE*
Assessment Data

Patient: OCONNER,MICHAEL
ED Physician: Louzon,Harvey MD
Chief Cmplnt: Head/Face Injury

Acct No.: 000151349313 Unit No.: 003173193
Age/sex: 23/M Loc: N02
Status: DIS IN

**TRIAGE - Triage Nurse Assessment**

*05/09/14 - 1508 - Reyes,Sara, RN*

Is this a CODE YELLOW? N
Requires IMMEDIATE Life-Saving Tx? N
Update Allergies & Home Meds Y
Arrival Mode Ambulance
Ambulance Co.
\#
CPD beat:
CPD badge:
Pain Intensity (0=least, 10=worst) 6
B/P 127/81
Pulse 66
Temp: 36.9 C T Srce O Temp 98.4 F
Resp 13
SpO2% 96
FLOWRATE OR %: RA i.e. 2L or 35% or RA (Room Air)
Accucheck High/Low?
ESI Age Category 4 : 2
Pt Status None Applicable
Resources Req'd Many
Calculated ESI 3 Patient Priority 3
Smoking Status Current every day smoker
Past Medical History? Yes

| Asthma | CAD | Cancer | Cardiac | CHF | COPD |
|---|---|---|---|---|---|
| CRF | CVA | DM | Drug Abuse | DVT/PE | Hepatitis |
| HIV | HTN | Hyperlipidemia | MI | Psych Y | Sickle Cell |
| SZ | | OTHER | | | |

Is the pt pregnant? LMP: LMP Comment:
Is this a febrile/flu like illness?
Immunizations
Tetanus <5YRS
Observable signs of Elder Abuse, Domestic Violence, Child Abuse/Neglect or Nursing Home Abuse/Neglect? N
Is this patient a fall risk? N
History of current mental health issue?

Isolation History on Next Page ->

Triage Note: PT IN CPD CUSTODY HAD ALTERCATION WITH SHERRIF DURING COURT, STS WAS "KICKED IN FACE, GROIN AND RT SIDE RIBS BY COPS." +LOC. NOTED DRY BLOOD AROUND NOSE AND MOUTH. PT ON BACK BOARD WITH C-COLLAR. A&OX3, CRYING, ANSWERING ALL QUESTIONS. DR LOUZON AT BS FOR ASSESSMENT.

Other Isolations: Initiated: At:
Precautions:

*** ORGANISMS ***

Pt is: Source: Organism:
Pt is: Source: Organism:
Pt is: Source: Organism:
Pt is: Source: Organism:
Pt is: Source: Organism:
Pt is: Source: Organism:

California Avenue at 15th Street
Chicago, Illinois 60608-1797
773-542-2000

# INPATIENT/OUTPATIENT REGISTRATION FORM

ACCOUNT NO. 000151349313
ROOM/BED ED190/01
TYPE ADM INo IN

ADMISSION DATE 05/09/14
ADMISSION TIME 1627
LOCATION/SERVICE SUR

MEDICAL RECORD NO. 003173193
FINANCIAL CLASS SELF
SOCIAL SECURITY NO. 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

**PATIENT**

NAME OCONNER,MICHAEL
STREET 10732 S SEELEY AVE
CITY/STATE/ZIP CHICAGO,IL 60643-3315
HOME PHONE 773-238-0680
COUNTY

**PATIENT**

DATE OF BIRTH 06/18/90
AGE 23
SEX M
RACE CA
RELIGION CATHOLIC
MAR. STS. NEVER MARR

**PATIENT EMPLOYER**

NAME UNEMPLOYED
STREET
CITY/STATE/ZIP
PHONE

**PERSON TO NOTIFY**

NAME OCONNER,MICHAEL SR
STREET 10732 S SEELEY AVE
CITY/STATE/ZIP CHICAGO,IL 60643-3315
HOME # 773-330-6024 WORK# RELAT. FA

**GUARANTOR**

NAME OCONNER,MICHAEL
STREET 10732 S SEELEY AVE
CITY/STATE/ZIP CHICAGO,IL 60643-3315
PHONE 773-238-0680 SOC. SEC. NO. 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

**NEXT OF KIN**

NAME OCONNER,MICHAEL SR
STREET 10732 S SEELEY AVE
CITY/STATE/ZIP CHICAGO,IL 60643-3315
HOME # 773-330-6024 WORK# RELAT. FA

**GUARANTOR EMPLOYER**

NAME UNEMPLOYED
STREET
CITY/STATE/ZIP
PHONE

ARRIVAL DATE TIME
ARRIVAL MODE CFD24
PHYSICIAN 1 Vafa,Amir MD
PHYSICIAN 2 Vafa,Amir MD
PCP Non-Staff,Physician

| INSURANCE | POLICY NUMBER | COVERAGE NO. | SUBSCRIBER |
|---|---|---|---|
| SELF PAY | | | OCONNER,MICHAEL |

ACCIDENT
COMMENT POLICE GUARD
REASON FOR VISIT BLUNT TRAUM+LOC

**REFERRING PHYSICIAN**

NAME
LOCATION
STREET
CITY/STATE/ZIP
PHONE
PHARMACY
PRIMARY LANGUAGE SPOKEN Y ENG

**LAST HOSPITALIZATION**

WHERE NO
FROM: TO:

SMOKING CESSATION MATERIALS GIVEN

USER: CALADR

**INPATIENT/OUTPATIENT REGISTRATION FORM**

060445 (Rev. 3/94)

TW ORIGINAL

MOUNT SINAI HOSPITAL MEDICAL CENTER
CALIFORNIA AVENUE AT 15TH ST
CHICAGO, IL 60608
PSYCHIATRY CONSULT

**********************************************************************************************

PATIENT NAME: MICHAEL OCONNER
MR#: 003173193
SEX: M
ATTENDING PHYSICIAN: Vafa,Amir MD
ADMIT/REGISTER DATE: 05/09/14

ACCT #: 000151349313
AGE: 23
BIRTHDATE: 06/18/90

ASSESSMENT:

1. Bipolar disorder, depressed, status post blunt trauma. He was beaten up to head and abdomen. Nondisplaced nasal bone fracture as a result of blunt trauma.
2. Hypertension, per patient.
3. Hypothyroidism, per patient.

RECOMMENDATIONS:
The patient still expresses suicidal ideations. Would benefit from continuation of 1:1 sitter. The patient currently takes Zyprexa 5 mg in the morning and 10 mg at bedtime. The patient complains of feeling extremely sleepy after taking Zyprexa in the morning, so we will recommended to change the Zyprexa to 15 mg at p.m. He also was started on Depakote 125 mg twice a day. It is a very small dose. Recommended to increase the dose to 500 mg twice a day. The patient has no liver function tests. * Recommended to obtain liver function tests and also TSH as patient reports that he has history of hypothyroidism. Monitor condition. Psych will follow up tomorrow. Discussed with trauma resident on call.

DICTATED BY: Elizabeth Mirkin, MD
EM: TID93529768

**********************************************************************************************

D: 05/10/14 1833

[30]
trans by: EMDAT
trans date: 05/10/14
e-signed on: at

------------------------------------
Elizabeth Mirkin

0512-0060

SHS PCI **LIVE** (PCI: OE Database MSC)

DRAFT COPY

Psychiatric Progress Notes
Mount Sinai Hospital

**Patient Name:** MICHAEL OCONNER
**MR #:** 003173193
**Date of Birth:** 06/18/90
**Admit Date:** 05/09/14

**Acct #:** 000151349313
**Room#:** N206-02
**Service Date:** 05/11/14
**Service Time:** 0824

## Daily Progress Note

**Time of patient visit:** 0815
*
Psychiatric follow up.

Pt is a 23y/o WM,. with h/o bipolar disorder, presenting from jail court after he became aggressive during he court and was assaulted by sheriff's police by fists to the head and abdomen with + LOC. Pt currently in police custody.
Pt is under trauma service. Psychiatric evaluation was done on 5/10/14.

Pt was seen for follow up. Chart reviewed, discussed with staff. Pt states "I have PTSD"- he reports "having flashbacks of bitting up" and had nightmare last night as well. Pt states that now he has flashbacks of previous traumatic expresinces as well. Pt denies haiving suicidal at this time, but states he does know how he will feel and how he will react. He is afraid he might hurt himself if starts feeling more depressed. Pt has no psychosis.
His speech is not pressured and there is no flight of ideas. Affect is constricted, intense, mood is anxious. Pt states he does not like to take Xanax or Klonopin because does not want anything addicting, but believes that Valium is not as addicting and was prescribed Valium by primary team.

labs reviewed: LFTs and TSH normal.

A: Bipolar d/o, depressed. PTSD.
blunt head trauma. Headache
P: cont 1;1 sitter
cont Zyprexa 15mg qpm,
cont Depakote 500mg bid,
Cont Valium, change the dose to 2mg q8hrs prn.
Add Prazosin 1mg now once and 2mg qhs, hold if BP <100/60 - given to address PTSD sx.
When medicallly stable, will need transfer to psychiatric inpatient unit, Pt is in police custody and will need to be transferred to Cermak.
psych will follow while the patient is in the hospital.

Discussed with trauma resident.

Dr. Mirkin, p 16467.

**************************************************************************************
Transcribed Date/Time
05/11/14 0824
Entered/Signed by Provider:
Date/Time
AT Electronic Signature by Mirkin,Elizabeth
05/11/14 0856

0511-0088
Run: 05/14/14-12:13 by Torres,Kimberly

AC# 000151349313
OCONNER,MICHAEL
M 23 06/18/90
Att:
Pri:

FC:
05/09/14
003173193

# TRAUMA EVALUATION HISTORY & PHYSICAL

| Studies | Results | Consults | Time Called | Answered |
|---|---|---|---|---|
| CXR | neg | Anesthesia | | |
| CT Cervical Spine | neg | Cardio/thoracic | | |
| Pelvis | neg | Hand | | |
| KUB, lateral | | Max/facial | | |
| Head CT | neg | Neurosurgery | | |
| Chest CT | | Obstetrics | | |
| Neck CT | | Ophthalmology | | |
| Abdominal CT | - neg | Orthopedics | | |
| Facial CT | nasal bone fx (non-displaced) | Pediatrics | | |
| Angiography | | Plastic | | |
| Other CT | pelvis - neg | Urology | | |
| Extremities | | Vascular | | |

X-thoracic - neg lumbar - neg

☐ Intubation: ☐ Oral ☐ Nasal # ________ Tube ☐ Curved Blade ☐ Straight Blade ☐ Pre-oxygenated
☐ Pre-medicated: Meds ________
☐ Placement confirmed by: ☐ Auscultation ☐ X-ray

☐ Chest Tube: ☐ Inserted # ________ French ☐ Anesthesia: ________ mL ________ (medication)
☐ Position: ☐ Mid ☐ Ant. ☐ Post ☐ Axillary Line ________ interspace ☐ Sutured in Place
☐ Position confirmed on CXR Return: ☐ Air ☐ Blood ________ mL

☐ Gastric Tube: ☐ Nasal ☐ Oral

☐ Foley Catheter: Size:

☐ Central Line Placement: Site: ☐ Femoral ☐ Subclavian ☐ Carotid (☐ Post. ☐ Ant. ☐ Inf. Approach)
Anesthesia: ________ mL ________ (medication)
☐ Sutured ☐ Good blood return ☐ Position confirmed on CXR

☐ Diagnostic Peritoneal Lavage:
☐ Bladder evacuated ☐ Betadine prep ☐ Anesthesia: ________ mL ________ (medication)
☐ Infraumbilical Return: ☐ Serous ☐ Serosanguinous ☐ Blood ________ mL
☐ Cell count

☐ Wound repair: Length ________ cm Location ________ ☐ Wound explored
☐ Foreign material removed debrided Wound Margins revised: ☐ Minimal ☐ Moderate ☐ Extensive

☐ Wound repair: Length ________ cm Location ________ ☐ Wound explored
☐ Foreign material removed debrided Wound Margins revised: ☐ Minimal ☐ Moderate ☐ Extensive

☐ Wound repair: Length ________ cm Location ________ ☐ Wound explored
☐ Foreign material removed debrided Wound Margins revised: ☐ Minimal ☐ Moderate ☐ Extensive

☐ Labs: Hematocrit ________ Amylase ________ ABG: pH ________ Pao2 ________ BE ________
Others:
142 | 103 | 15 | 100 < 126
4.0 | 26 | 1.2 |
13.9 / 41.0 < 237

ED Thoracotomy Side: Left Right Cricothyroidotomy

ETOH - 1.2.

UA abnormals:
spec grav 1.0333
pro: 10
ketones: 40
mod mucus

Plan as Follows:

| | Diagnosis | | Plan |
|---|---|---|---|
| 1 | Assault to face, | 1 | Admit 23 hour obs |
| 2 | body, and ~~trunk~~ back. | 2 | social work |
| 3 | (+) LOC | 3 | Psych consult |
| 4 | (+) Suicidal ideations | 4 | |
| 5 | | 5 | |

Discussed with Trauma Attending Dr. VAFA Time 1700

Resident Physician Signature: [signature] Pager # 19350

AC# 000151349313
OCONNER,MICHAEL
M 23 06/18/90
Att:
Pri:

FC:
05/09/14
003173193

# TRAUMA EVALUATION HISTORY & PHYSICAL

Trauma Attending Note:
Above Residents History, Physical and Plan reviewed. I agree with both assessment and plan.
Patient interviewed by me. Briefly, history of present illness is:

Pt s/p blunt trauma to body, patient (+) LOC, complains pain in wrist, (R) back and (L) ribs
States he is manic

PMH: Bipolar disorder SH: marijuana on occasion FH: Depress

On examination, I found: Alert, Ox3, GCS 15, (+) decisional capacity,
[illegible] PERRL, Swelling B/L zygomatic arch c̄ ecchymosis
CV: Regular Rate
Resp: clear to auscultation B/L, B/L equal BS
Abd: soft, Ø guarding, Ø rebound, Ø peritonitis.
Ext: moves all extremity, 2+DP, 2+Radial

Assessment & Plan: Pt s/p concussion, nasal bone fx,
Bipolar, [illegible] psych consult

☐ Expected LOS > 2 midnights (MCR)

Anticipated D/C dispo:

[signature] [illegible] 19092
Trauma Attending Signature/Pager No.

5/9/14 6:45pm
Date/Time

Mt. Sinai Hospital
Department of Imaging Services
California Avenue at 15th Street
Chicago, Illinois 60608

Name: OCONNER,MICHAEL
Phys: Williams,Meredith MD
DOB: 06/18/1990 Age: 23 Sex: M
Acct: 000151349313 Loc: N211 01
Exam Date: 05/09/2014 Status: DIS INo
Radiology No:
Unit No: 003173193

***** Report is Signed *****

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|
| 001907183 | CT/CT BRAIN WO CONTRAST | |

EXAM: CT BRAIN WO CONTRAST

CLINICAL HISTORY: TRAUMA RESUSCITATION

COMPARISON: None

FINDINGS: The cerebral and cerebellar hemispheres are normal in attenuation and morphology. There is no intracranial mass, hemorrhage or abnormal extra-axial fluid collection. The lateral ventricles are normal in volume and midline is maintained. The mastoid air cells and paranasal sinuses are normally pneumatized.

***IMPRESSION:*** ***No acute abnormality.***

***Electronically Signed By:*** ***Carl Valentin, MD***

** REPORT SIGNED IN OTHER VENDOR SYSTEM 05/09/2014 **
Reported By: Valentin MD, Carl N.

CC: Harvey Louzon MD; Meredith Williams MD

Technologist: Green,Eloise

Transcribed Date/Time: 05/09/2014 (1551)
Transcriptionist: VALCA
Printed Date/Time: 05/14/2014 (1213)
 Signed Report Printed From PCI

Mt. Sinai Hospital
Department of Imaging Services
California Avenue at 15th Street
Chicago, Illinois 60608

Name: OCONNER,MICHAEL
Phys: Williams,Meredith MD
DOB: 06/18/1990 Age: 23 Sex: M
Acct: 000151349313 Loc: N211 01
Exam Date: 05/09/2014 Status: DIS INo
Radiology No:
Unit No: 003173193

***** Report is Signed *****

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|
| 001907184 | CT/CT CERVICAL SPINE WO CONTRAS | |

EXAM: CT CERVICAL SPINE WO CONTRAST

CLINICAL HISTORY: TRAUMA RESUSCITATION

COMPARISON: None

FINDINGS: The normal lordotic curvature of the cervical spine is maintained. Intervertebral disc and vertebral body heights are maintained. No fracture or malalignment is identified. The soft tissues are unremarkable. Neuroforamina and cord canal are patent at all levels.

***IMPRESSION: No acute abnormality.***

***Electronically Signed By: Carl Valentin, MD***

** REPORT SIGNED IN OTHER VENDOR SYSTEM 05/09/2014 **
Reported By: Valentin MD, Carl N.

CC: Harvey Louzon MD; Meredith Williams MD

Technologist: Green,Eloise

Transcribed Date/Time: 05/09/2014 (1552)
Transcriptionist: VALCA
Printed Date/Time: 05/14/2014 (1213)
PAGE 1
Signed Report Printed From PCI

Psychiatric Progress Notes
Mount Sinai Hospital

**Patient Name:** MICHAEL OCONNER
**MR #:** 003173193
**Date of Birth:** 06/18/90
**Admit Date:** 05/09/14

**Acct #:** 000151349313
**Room#:** N206-02
**Service Date:** 05/11/14
**Service Time:** 0824

## Daily Progress Note

**Time of patient visit:** 0815
*

Psychiatric follow up.

Pt is a 23y/o WM,. with h/o bipolar disorder, presenting from jail court after he became aggressive during he court and was assaulted by sheriff's police by fists to the head and abdomen with + LOC. Pt currently in police custody.
Pt is under trauma service. Psychiatric evaluation was done on 5/10/14.

Pt was seen for follow up. Chart reviewed, discussed with staff. Pt states "I have PTSD"- he reports "having flashbacks of bitting up" and had nightmare last night as well. Pt states that now he has flashbacks of previous traumatic expresinces as well. Pt denies haiving suicidal at this time, but states he does know how he will feel and how he will react. He is afraid he might hurt himself if starts feeling more depressed. Pt has no psychosis.
His speech is not pressured and there is no flight of ideas. Affect is constricted, intense, mood is anxious. Pt states he does not like to take Xanax or Klonopin because does not want anything addicting, but believes that Valium is not as addicting and was prescribed Valium by primary team.

labs reviewed: LFTs and TSH normal.

A: Bipolar d/o, depressed. PTSD.
blunt head trauma. Headache
P: cont 1;1 sitter
cont Zyprexa 15mg qpm,
cont Depakote 500mg bid,
Cont Valium, change the dose to 2mg q8hrs prn.
Add Prazosin 1mg now once and 2mg qhs, hold if BP <100/60 - given to address PTSD sx.
When medicallly stable, will need transfer to psychiatric inpatient unit, Pt is in police custody and will need to be transferred to Cermak.
psych will follow while the patient is in the hospital.

Discussed with trauma resident.

Dr. Mirkin, p 16467.

*****************************************************************************

**Transcribed Date/Time**
05/11/14 0824
**Entered/Signed by Provider:**
**Date/Time**
AT Electronic Signature by Mirkin,Elizabeth
05/11/14 0856

0511-0088
Run: 05/14/14-12:13 by Torres,Kimberly

Trauma Surgery Progress Note
Mt Sinai Hospital

**Patient Name:** MICHAEL OCONNER
**MR #:** 003173193
**Date of Birth:** 06/18/90
05/10/14
**Admit Date:** 05/09/14

**Acct #:** 000151349313
**Room#:** N206-01
**Service Date:**

**Service Time:** 0651

(1)Acetaminophen/Hydrocodone Bitart:
1-2 TABLETS
PAIN 1-5: 1 TAB
PAIN 6-10: 2 TABS

**Problem List**
**Medical Problems**
Bipolar disorder
Blunt trauma of multiple sites

**Assessment and Plan**
23yo bipolar M presenting from bail court after he was assaulted by sheriff's police by fists to the head and abdomen with + LOC and expressing SI, denying this am. Pt currently in police custody.

Blunt trauma
- CT head, abd/pelvis, CXR, clear
- c-collar cleared
- CT facial bones with equivocal non-displaced nasal bone fracture
- f/u PT/OT recs
- f/u SW recs

SI, resolved as of this am per pt
- 1:1 sitter
- f/u SW recs
- f/u psych recs

FEN

Dispo
- pending psych clearance; to police custody

Lauren Myers, MD
Trauma service PGY-1
Pager 16446

**ADDENDUM: Vafa MD,Amir on 05/10/14 at 1250**

Run: 05/14/14-12:13 by Torres,Kimberly

Additional copy



AC# 000151349313
OCONNER,MICHAEL
M 23 06/18/90
Att:
Pri:

FC:
05/09/14
003173193

# TRAUMA EVALUATION HISTORY & PHYSICAL

| Studies | Results | Consults | Time Called | Answered |
|---|---|---|---|---|
| CXR | neg | Anesthesia | | |
| Cervical Spine (CT) | neg | Cardio/thoracic | | |
| Pelvis | neg | Hand | | |
| KUB, lateral | | Max/facial | | |
| Head CT | neg | Neurosurgery | | |
| Chest CT | | Obstetrics | | |
| Neck CT | | Ophthalmology | | |
| Abdominal CT | -neg | Orthopedics | | |
| Facial CT | nasal bone fx (non-displaced) | Pediatrics | | |
| Angiography | | Plastic | | |
| Other CT | pelvis - neg | Urology | | |
| Extremities | | Vascular | | |

x-thoracic - neg lumbar - neg

☐ Intubation: ☐ Oral ☐ Nasal # ________ Tube ☐ Curved Blade ☐ Straight Blade ☐ Pre-oxygenated
☐ Pre-medicated: Meds ________
☐ Placement confirmed by: ☐ Auscultation ☐ X-ray

☐ Chest Tube: ☐ Inserted # ________ French ☐ Anesthesia: ________ mL ________ (medication)
☐ Position: ☐ Mid ☐ Ant. ☐ Post ☐ Axillary Line ________ Interspace ☐ Sutured in Place
☐ Position confirmed on CXR Return: ☐ Air ☐ Blood ________ mL

☐ Gastric Tube: ☐ Nasal ☐ Oral

☐ Foley Catheter: Size: ________

☐ Central Line Placement: Site: ☐ Femoral ☐ Subclavian ☐ Carotid (☐ Post. ☐ Ant. ☐ Inf. Approach)
Anesthesia: ________ mL ________ (medication)
☐ Sutured ☐ Good blood return ☐ Position confirmed on CXR

☐ Diagnostic Peritoneal Lavage:
☐ Bladder evacuated ☐ Betadine prep ☐ Anesthesia: ________ mL ________ (medication)
☐ Infraumbilical Return: ☐ Serous ☐ Serosanguinous ☐ Blood ________ mL
☐ Cell count

☐ Wound repair: Length ________ cm Location ________ ☐ Wound explored
☐ Foreign material removed debrided Wound Margins revised: ☐ Minimal ☐ Moderate ☐ Extensive

☐ Wound repair: Length ________ cm Location ________ ☐ Wound explored
☐ Foreign material removed debrided Wound Margins revised: ☐ Minimal ☐ Moderate ☐ Extensive

☐ Wound repair: Length ________ cm Location ________ ☐ Wound explored
☐ Foreign material removed debrided Wound Margins revised: ☐ Minimal ☐ Moderate ☐ Extensive

☐ Labs: Hematocrit ________ Amylase ________ ABG: pH ________ Pao2 ________ BE ________
Others:

142 | 103 | 15 / 4.0 | 26 | 1.2 < 100 ; 12.6 > 13.9 / 41.0 < 237

ED Thoracotomy Side: Left Right Cricothyroidotomy INR - 1.2

UA abnormals
spec grav 1.0333
pro: 10
ketones: 40
mod mucus

Plan as Follows:

| Diagnosis | | Plan | |
|---|---|---|---|
| 1 | Assault to face, | 1 | Admit 23 hour obs |
| 2 | body, and ~~trunk~~ back. | 2 | social work |
| 3 | (+) LOC | 3 | Psych consult |
| 4 | (+) Suicidal ideations | 4 | |
| 5 | | 5 | |

Discussed with Trauma Attending Dr. Vafa Time 1700

Resident Physician Signature: [signature] Pager # 19850

AC# 000151349313
OCONNER,MICHAEL
M 23 06/18/90
Att:
Pri:

FC:
05/09/14
003173193

TRAUMA EVALUATION HISTORY & PHYSICAL

Trauma Attending Note:
Above Residents History, Physical and Plan reviewed. I agree with both assessment and plan.
Patient interviewed by me. Briefly, history of present illness is:

Pt s/p blunt trauma to body, patient (+) LOC, complains pain in wrist, (R) back and (L) ribs states he is manic

PMH: Bipolar disorder SH: marijuana on occasion FH: Depress—

On examination, I found: Alert, OX3, GCS 15, (+) decisional capacity, EOMI, PERRL, Swelling B/L zygomatic arch c̄ ecchymosis
CV: Regular Rate
Resp: clear to auscultation B/L, B/L equal BS
Abd: soft, ϕ guarding, ϕ rebound, ϕ peritonitis
Ext: moves all extremity, 2+DP, 2+Radial

Assessment & Plan: Pt s/p concussion, nasal bone fx, Bipolar, [illegible] psych consult

☐ Expected LOS > 2 midnights (MCR)

Anticipated D/C dispo:

[signature]

Trauma Attending Signature/Pager No.

5/9/14 6:45pm
Date/Time

Psychiatric Progress Notes
Mount Sinai Hospital

**Patient Name:** MICHAEL OCONNER
**MR #:** 003173193
**Date of Birth:** 06/18/90
**Admit Date:** 05/09/14

**Acct #:** 000151349313
**Room#:** N206-02
**Service Date:** 05/10/14
**Service Time:** 1904

## Daily Progress Note

**Time of patient visit:** 1730
*

Psychiatric evaluation. See dictated report #13066828.

Pt is a 23y/o WM,. with h/o bipolar disorder, presenting from jail court after he became aggressive during he court and was assaulted by sheriff's police by fists to the head and abdomen with + LOC. Pt currently in police custody.
Pt is under trauma service. Psychiatric evaluation requested due to expressing suicidal ideations.

A: Bipolar d/o, depressed.
blunt head trauma.
P: cont 1;1 sitter,
change Zyprexa to 15mg qpm,
increase Depakote to 500mg bid,
order LFT and TSH
psych will follow.

Thank you for referral

Discussed with trauma resident.

*****************************************************************************
Transcribed Date/Time
05/10/14 1904
Entered/Signed by Provider:
Date/Time
AT Electronic Signature by Mirkin,Elizabeth
05/10/14 1955

0510-0314
Run: 05/14/14-12:13 by Torres,Kimberly

Additional copy

Facial abrasions ecchymosis

AC# 000151349313 OCONNER,MICHAEL M 23 06/18/90 Att: Pri:

FC: 05/09/14 003173193

# TRAUMA EVALUATION HISTORY & PHYSICAL

**Head** ☐ No evidence of trauma
☐ Battle's sign/Raccoon eyes
**Neck:** ☐ Non-tender
☑ Trachea midline
Carotid Bruit ☐ Yes ☐ No
**C-Spine:** ☐ Non-tender
☑ Tender @ C6 Level
☐ Pain on Movement
☐ No Deformity
☐ Deformity @ Level
**LS Spine:** ☐ Non-tender
☐ Muscle spasm/decreased ROM
☑ Tender @ L4-5 Level & sacral
☐ No Deformity
☐ Deformity @ Level
**Eyes:** ☐ EOMI 2 beats nystagmus to left
☑ PERRL ☐ Unequal pupils
Rt mm Lt mm
☐ EOM entrapment/palsy
☐ Subconjunctival hemorrhage
Visual acuity: ☐ NL ☐ Abn.
☐ Unable to obtain

**ENT:** ☐ NL external inspection
☐ No dental injury
☐ Dental malocclusion
☐ Hemotympanum
☑ Clotted nasal blood
(R) ear tympanic membrane covered c/ blood, in tact. (L) occluded w/ cerumen

**Respiratory**
☑ Breath sounds NL
☐ Decreased breath sounds
☐ Wheezing/rales
☐ Effort: ☐ NL ☐ Splinting

**Cardio/Vascular**
Chest wall: ☐ Tender ☐ Non-tender
Heart sounds: ☐ NL ☐ Abnormal

**ABDOMEN:**
☐ Non-tender
☐ No hepatomegaly/splenomegaly
☐ Evisceration
☑ Tenderness ☐ Grading ☐ Mass
☐ Rebound ☐ Abn. Bowel Sounds

**PELVIS:**
AP compression of iliac crests
☑ Stable ☐ Unstable
AP compression of symphysis pubis
☑ Stable ☐ Unstable

| | Right | Left | Both |
|---|---|---|---|
| **Hand** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| **Wrist** | | | |
| ☑ Normal ROM | | | X |
| ☐ Limited ROM | | | |
| ☐ Tenderness in anatomical snuff box | | | |
| ☐ Wrist pain on axial thumb load | | | |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity | | | |
| **Forearm/Elbow** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| ☐ Limited ROM | | | |
| **Arm/Shoulder** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | X |
| ☐ Deformity/tender | | | |
| ☐ BBI: | | | |
| ☐ Doppler | | | |
| ☐ Normal | | | |
| **Foot** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| **Ankle** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| ☐ Limited ROM | | | |
| ☐ Laxity of ligaments | | | |
| **Leg** | | | |
| ☑ Normal | | X | |
| ☐ Limited ROM | | | |
| ☐ Swelling/ecchymosis | | | |
| ☑ Deformity/tender popl (R) fossa | X | | |
| ☐ ABI: | | | |
| ☐ Doppler | | | |
| ☐ Normal | | | |

**GENITAL/RECTAL:** ☒ NL Genital
☑ NL Rectal ☐ Heme neg. stool
☐ Peritoneal hematoma
☐ Blood at the urethral meatus
Rectal tone: ☒ NL ☐ Absent
Sacral sensor: ☐ Decreased ☐ Absent
Date of Last Menstrual Period ____
Date of Last Mammogram ____
Date of Last pap smear ____
**Cranial Nerves:** (2 to 12)
☑ Normal
☑ Abnormal dec sensation on (R) side face
**Peripheral sensori-motor**
☑ No motor deficits
☐ No sensory deficits
☐ Hemiparesis/hemiplegia
☐ Rt ☐ Lt
☐ Pronator drift: ☐ RUE ☐ LUE
Pulses

2+ 2+ 2+ 2+ 2+ 2+ 2+ 2+

## GLASGOW TRAUMA SCORE (CIRCLE)

| Eye Opening | | Verbal | | Motor | |
|---|---|---|---|---|---|
| Spontaneous | (4) | Normal conversation | (5) | Normal | (6) |
| To Voice | 3 | Disoriented conversation | 4 | Localized to pain | 5 |
| To Pain | 2 | Words, but not coherent | 3 | Withdraws to pain | 4 |
| None | 1 | No words, only sounds | 2 | Decorticate | 3 |
| | | None | 1 | Decerebrate | 2 |
| | | | | None | 1 |
| | | | | TOTAL | 15 |



A proud member of Sinai Health System

MOUNT SINAI HOSPITAL

AC# 000151349313
OCONNER,MICHAEL
M 23 06/18/90
Att:
Pri:

FC:
05/09/14
003173193

# TRAUMA EVALUATION HISTORY & PHYSICAL

Date: 5/9/14

Trauma Alert: Time Called: 3:15 pm Time Team Arrived: 3:18 pm Time Patient Examined: 3:20 pm Trauma Consult, Time Called: ______

Historian: ☑ Patient ☐ Spouse/caregiver/family ☐ Paramedics/police ☐ Translator

Patient unable to provide complete history due to: ☐ Severe acute/chronic neurological impairment ☐ Imminent respiratory/circulatory collapse ☐ Extensive trauma ☐ Profound intoxication: ______ Intoxicant(s)

Alternative history obtained from: ☐ Nursing home records ☐ Hospital records ☐ No other source available

| History of Present Illness | Scene Information | Blunt | Penetrating |
|---|---|---|---|
| Chief Complaint: Injury due to: | Estimated Time of Injury: | ☐ Motor Vehicle Crash | ☐ Gun Shot Wound |
| s/p assault by police/[illegible] | ☐ Prior to admission | ☐ Driver | ☐ Handgun |
| during outburst at court | ☑ 3 hrs hours to injury | Restrained: Yes No | ☐ Assault rifle |
| General Appearance | Place of Injury | ☐ Passenger(s) | ☐ Sport rifle |
| | ☐ Home ☐ Work | Restrained: Yes No | ☐ Other: |
| | ☐ Street ☑ Public place | Restrained: Yes No | ☐ Caliber: |
| | Scene Treatment | Restrained: Yes No | ☐ Distance: |
| | ☑ C-collar ☐ Long board | Restrained: Yes No | ☐ Gauge: |
| | Airway | ☐ Air Bag deployed: Yes No | ☐ Stab Wound |
| | Tracheal Intubation Yes (No) | ☐ Car Speed < 35 MPH | ☐ Knife |
| | LMA Yes (No) | ☐ Car Speed > 35 MPH | ☐ Other: |
| BP: [illegible] (127/81) P: 66 | Combi-tube Yes (No) | ☐ High, speed unknown | ☐ Impalement: |
| R: 13 Temp: 98.4 | Loss of Consciousness | ☐ Head on collision | ☐ Object |
| Location & Duration of Pain/Injury | ☑ Yes ☐ No | ☐ Lateral Impact: Rt Lt | |
| ☑ Since injury occurred 3 hrs | Duration | ☐ Rear Impact ☐ Rollover | |
| Location: went at lat left chest | Mode of Transport | ☐ Prolonged extrication | |
| | ☑ Ambulance | ☐ Major vehicular deformity | |
| Severity of Pain | ☐ Private Vehicle | ☐ Steering column collapse | |
| ☐ Severe ☐ Mild ☑ Moderate | Other Information | ☐ Death at scene | |
| Quality of Pain | ☐ Large blood loss at scene | ☐ Pedestrian collision | |
| ☑ Sharp ☑ Dull ☑ Throbbing | ☐ Loss of bladder function | ☐ Cycle Crash | |
| ☐ Burning ☐ Intermittent ☐ Continuous | ☐ ETOH noted at scene | ☐ Motorcycle ☐ Bicycle | |
| Past Medical History | | ☐ Helmet Yes No | |
| ☐ Non-contributory to presenting problem | Family History | ☑ Assault | |
| ☐ Unable to Obtain | ☑ Non-contributory to presenting problem | ☑ Fist ☐ Kick | |
| ☐ Positive for: Bipolar disorder | ☐ Unable to Obtain | ☐ Other | |
| Social History | ☐ Positive for: ☐ Cancer ☐ HTN | ☐ Fall | |
| ☐ Non-contributory to presenting problem | ☐ Diabetes ☐ Other | Height: | |
| ☐ Unable to Obtain | | | |
| ☐ ETOH ☑ Smoker ☑ Drug use (marijuana) | | | |
| ☐ Positive for: | | | |

| Review of Systems | Unable to Obtain | Neg. | If positive, brief explanation |
|---|---|---|---|
| Constitutional | ☐ | ☐ | ☐ |
| Eyes | ☐ | ☐ | ☑ blurry vision |
| ENT/Mouth | ☐ | ☐ | ☑ |
| Cardiovascular | ☐ | ☑ | ☐ |
| Respiratory | ☐ | ☐ | ☑ pain w/ deep insp. |
| Gastrointestinal | ☐ | ☐ | ☑ mod nausea |
| Musculoskeletal | ☐ | ☑ | ☐ |
| Integ/Skin | ☐ | ☑ | ☐ |
| Neuro | ☐ | ☐ | ☑ (R) side face loss of sens. (mild) |
| Psych | ☐ | ☐ | ☑ suicidal ideation |
| Endo | ☐ | ☑ | ☐ |
| Heme/Lymph | ☐ | ☑ | ☐ |
| Allergy/Immune | ☐ | ☑ | ☐ |

Body diagram annotations: E, E, E (face); E/hematoma (head, posterior); A/T (posterior arm)

Document size of all lacerations in centimeters

T=Tenderness E=Ecchymosis
PtT=Point Tenderness Lac=Laceration
S=Swelling A=Abrasion
B=Burn

**Note: Please check each box individually**

050879 Rev. (05/11)

FORM 579

Facial abrasions ecchymosis

AC# 000151349313 FC:
OCONNER,MICHAEL 05/09/14
M 23 06/18/90 003173193
Att:
Pri:

# TRAUMA EVALUATION HISTORY & PHYSICAL

**Head** ☐ No evidence of trauma
☐ Battle's sign/Raccoon eyes
**Neck:** ☐ Non-tender
☑ Trachea midline
Carotid Bruit ☐ Yes ☐ No
**C-Spine:** ☐ Non-tender
☑ Tender @ C6 Level
☐ Pain on Movement
☐ No Deformity
☐ Deformity @ Level
**LS Spine:** ☐ Non-tender
☐ Muscle spasm/decreased ROM
☑ Tender @ T 4-8 Level & sacral
☐ No Deformity
☐ Deformity @ Level
**Eyes:** ☐ EOMI 2 lack cooperation to EOM
☑ PERRL ☐ Unequal pupils
Rt mm Lt mm
☐ EOM entrapment/palsy
☐ Subconjunctival hemorrhage
Visual acuity: ☐ NL ☐ Abn.
☐ Unable to obtain

**ENT:** ☐ NL external inspection
☐ No dental injury — (R) ear tympanic membrane covered w/ blood, in tact. (L) occluded w/ cerumen
☐ Dental malocclusion
☐ Hemotympanum
☑ Clotted nasal blood
**Respiratory**
☑ Breath sounds NL
☐ Decreased breath sounds
☐ Wheezing/rales
☐ Effort: ☐ NL ☐ Splinting
**Cardio/Vascular**
Chest wall: ☐ Tender ☐ Non-tender
Heart sounds: ☐ NL ☐ Abnormal

**ABDOMEN:**
☐ Non-tender
☐ No hepatomegaly/splenomegaly
☐ Evisceration
☑ Tenderness ☐ Grading ☐ Mass
☐ Rebound ☐ Abn. Bowel Sounds
**PELVIS:**
AP compression of iliac crests
☑ Stable ☐ Unstable
AP compression of symphysis pubis
☑ Stable ☐ Unstable

| | Right | Left | Both |
|---|---|---|---|
| **Hand** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| **Wrist** | | | |
| ☑ Normal ROM | | | X |
| ☐ Limited ROM | | | |
| ☐ Tenderness in anatomical snuff box | | | |
| ☐ Wrist pain on axial thumb load | | | |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity | | | |
| **Forearm/Elbow** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| ☐ Limited ROM | | | |
| **Arm/Shoulder** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | X |
| ☐ Deformity/tender | | | |
| ☐ BBI: | | | |
| ☐ Doppler | | | |
| ☐ Normal | | | |
| **Foot** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| **Ankle** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| ☐ Limited ROM | | | |
| ☐ Laxity of ligaments | | | |
| **Leg** | | | |
| ☑ Normal | | X | |
| ☐ Limited ROM | | | |
| ☐ Swelling/ecchymosis | | | |
| ☑ Deformity/tender pop (R) fossa | X | | |
| ☐ ABI: | | | |
| ☐ Doppler | | | |
| ☐ Normal | | | |

**GENITAL/RECTAL:** ☒ NL Genital
☑ NL Rectal ☐ Heme neg. stool
☐ Peritoneal hematoma
☐ Blood at the urethral meatus
Rectal tone: ☒ NL ☐ Absent
Sacral sensor: ☐ Decreased ☐ Absent
Date of Last Menstrual Period ______
Date of Last Mammogram ______
Date of Last pap smear ______
**Cranial Nerves:** (2 to 12)
☑ Normal
☑ Abnormal lac on (R) side face
**Peripheral sensori-motor**
☑ No motor deficits
☐ No sensory deficits
☐ Hemiparesis/hemiplegia
☐ Rt ☐ Lt
☐ Pronator drift: ☐ RUE ☐ LUE
Pulses

2+ 2+ 2+ 2+ 2+ 2+ 2+ 2+

## GLASGOW TRAUMA SCORE (CIRCLE)

| Eye Opening | | Verbal | | Motor | |
|---|---|---|---|---|---|
| Spontaneous | (4) | Normal conversation | (5) | Normal | (6) |
| To Voice | 3 | Disoriented conversation | 4 | Localized to pain | 5 |
| To Pain | 2 | Words, but not coherent | 3 | Withdraws to pain | 4 |
| None | 1 | No words, only sounds | 2 | Decorticate | 3 |
| | | None | 1 | Decerebrate | 2 |
| | | | | None | 1 |
| | | | | TOTAL | 15 |



A proud member of Sinai Health System
SINAI
MOUNT SINAI HOSPITAL

AC# 000151349313
OCONNER,MICHAEL
M 23 06/18/90
Att:
Pri:

FC:
05/09/14
003173193

# TRAUMA EVALUATION HISTORY & PHYSICAL

Date: 5/9/14

Trauma Alert: Time Called: 3:15 pm Time Team Arrived: 3:18 pm Time Patient Examined: 3:20 pm Trauma Consult, Time Called: ______

Historian: ☑ Patient ☐ Spouse/caregiver/family ☐ Paramedics/police ☐ Translator

Patient unable to provide complete history due to: ☐ Severe acute/chronic neurological impairment ☐ Imminent respiratory/circulatory collapse ☐ Extensive trauma ☐ Profound intoxication: ______ intoxicant(s)

Alternative history obtained from: ☐ Nursing home records ☐ Hospital records ☐ No other source available

| History of Present Illness | Scene Information | Blunt | Penetrating |
|---|---|---|---|
| Chief Complaint: Injury due to: s/p assault by police/security during outburst at court | Estimated Time of Injury: ☐ Prior to admission ☑ 3 hrs hours to injury | ☐ Motor Vehicle Crash ☐ Driver Restrained: Yes No | ☐ Gun Shot Wound ☐ Handgun ☐ Assault rifle |
| General Appearance | Place of Injury: ☐ Home ☐ Work ☐ Street ☑ Public place | ☐ Passenger(s) Restrained: Yes No (×4) | ☐ Sport rifle ☐ Other: ☐ Caliber: ☐ Distance: ☐ Gauge: |
| | Scene Treatment: ☑ C-collar ☐ Long board | ☐ Air Bag deployed: Yes No | ☐ Stab Wound |
| BP: [crossed out] 127/81 P: 66 | Airway: Tracheal Intubation Yes (No); LMA Yes (No); Combi-tube Yes (No) | ☐ Car Speed < 35 MPH ☐ Car Speed > 35 MPH ☐ High, speed unknown | ☐ Knife ☐ Other: ☐ Impalement: ☐ Object |
| R: 13 Temp: 98.4 | Loss of Consciousness: ☑ Yes ☐ No Duration | ☐ Head on collision ☐ Lateral Impact: Rt Lt ☐ Rear Impact ☐ Rollover | |
| Location & Duration of Pain/Injury: ☑ Since injury occurred 3 hrs Location: went at left chest | Mode of Transport: ☑ Ambulance ☐ Private Vehicle | ☐ Prolonged extrication ☐ Major vehicular deformity ☐ Steering column collapse | |
| Severity of Pain: ☐ Severe ☐ Mild ☑ Moderate | Other Information: ☐ Large blood loss at scene ☐ Loss of bladder function ☐ ETOH noted at scene | ☐ Death at scene ☐ Pedestrian collision | |
| Quality of Pain: ☑ Sharp ☑ Dull ☑ Throbbing ☐ Burning ☐ Intermittent ☐ Continuous | | ☐ Cycle Crash: ☐ Motorcycle ☐ Bicycle ☐ Helmet Yes No | |
| Past Medical History: ☐ Non-contributory to presenting problem ☐ Unable to Obtain ☐ Positive for: Bipolar disorder | Family History: ☑ Non-contributory to presenting problem ☐ Unable to Obtain ☐ Positive for: ☐ Cancer ☐ HTN ☐ Diabetes ☐ Other | ☑ Assault: ☑ Fist ☐ Kick ☐ Other ☐ Fall Height: | |
| Social History: ☐ Non-contributory to presenting problem ☐ Unable to Obtain ☐ ETOH ☑ Smoker ☑ Drug use marijuana ☐ Positive for: | | | |

| Review of Systems | Unable to Obtain | Neg. | If positive, brief explanation |
|---|---|---|---|
| Constitutional | ☐ | ☐ | ☐ |
| Eyes | ☐ | ☐ | ☑ blurry vision |
| ENT/Mouth | ☐ | ☐ | ☑ |
| Cardiovascular | ☐ | ☑ | ☐ |
| Respiratory | ☐ | ☐ | ☑ pain w/ deep insp. |
| Gastrointestinal | ☐ | ☐ | ☑ mod nausea |
| Musculoskeletal | ☐ | ☑ | ☐ |
| Integ/Skin | ☐ | ☑ | ☐ |
| Neuro | ☐ | ☐ | ☑ (R) side face loss of sens. (mild) |
| Psych | ☐ | ☐ | ☑ suicidal ideation |
| Endo | ☐ | ☑ | ☐ |
| Heme/Lymph | ☐ | ☑ | ☐ |
| Allergy/Immune | ☐ | ☑ | ☐ |

Body diagram annotations: E, E (face); E/hematoma (back of head); A/T (back of leg)

Document size of all lacerations in centimeters

T=Tenderness, PtT=Point Tenderness, S=Swelling, B=Burn, E=Ecchymosis, Lac=Laceration, A=Abrasion

**Note: Please check each box individually**

050879 Rev. (05/11)

FORM 579

254 OF 254

Facial abrasions ecchymoses

AC# 000151349313
OCONNER,MICHAEL M 23 06/18/90
Att:
Pri:
FC: 05/09/14 003173193

NL

# TRAUMA EVALUATION HISTORY & PHYSICAL

**Head** ☐ No evidence of trauma
☐ Battie's sign/Raccoon eyes
**Neck:** ☐ Non-tender
☑ Trachea midline
Carotid Bruit ☐ Yes ☐ No
**C-Spine:** ☐ Non-tender
☑ Tender @ C6 Level
☐ Pain on Movement
☐ No Deformity
☐ Deformity @ Level
**LS Spine:** ☐ Non-tender
☐ Muscle spasm/decreased ROM
☑ Tender @ L4-8 Level & sacral
☐ No Deformity
☐ Deformity @ Level
**Eyes:** ☐ EOMI 2 beats nystagmus to left
☑ PERRL ☐ Unequal pupils
Rt mm Lt mm
☐ EOM entrapment/palsy
☐ Subconjunctival hemorrhage
Visual acuity: ☐ NL ☐ Abn.
☐ Unable to obtain

**ENT:** ☐ NL external inspection
☐ No dental injury (R) ear tympanic membrane covered w/ blood, in fact. (L) occluded w/ cerumen
☐ Dental malocclusion
☐ Hemotympanum
☑ Clotted nasal blood
**Respiratory**
☑ Breath sounds NL
☐ Decreased breath sounds
☐ Wheezing/rales
☐ Effort: ☐ NL ☐ Splinting
**Cardio/Vascular**
Chest wall: ☐ Tender ☐ Non-tender
Heart sounds: ☐ NL ☐ Abnormal

**ABDOMEN:**
☐ Non-tender
☐ No hepatomegaly/splenomegaly
☐ Evisceration
☑ Tenderness ☐ Grading ☐ Mass
☐ Rebound ☐ Abn. Bowel Sounds
**PELVIS:**
AP compression of iliac crests
☑ Stable ☐ Unstable
AP compression of symphysis pubis
☑ Stable ☐ Unstable

| | Right | Left | Both |
|---|---|---|---|
| **Hand** | | | |
| ☑ Normal | | | 2+ |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| **Wrist** | | | |
| ☑ Normal ROM | | | X |
| ☐ Limited ROM | | | |
| ☐ Tenderness in anatomical snuff box | | | |
| ☐ Wrist pain on axial thumb load | | | |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity | | | |
| **Forearm/Elbow** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| ☐ Limited ROM | | | |
| **Arm/Shoulder** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | X |
| ☐ Deformity/tender | | | |
| ☐ BBI: | | | |
| ☐ Doppler | | | |
| ☐ Normal | | | |
| **Foot** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| **Ankle** | | | |
| ☑ Normal | | | X |
| ☐ Swelling/ecchymosis | | | |
| ☐ Deformity/tender | | | |
| ☐ Limited ROM | | | |
| ☐ Laxity of ligaments | | | |
| **Leg** | | | |
| ☑ Normal | | X | |
| ☐ Limited ROM | | | |
| ☐ Swelling/ecchymosis | | | |
| ☑ Deformity/tender popl (R) fossa | X | | |
| ☐ ABI: | | | |
| ☐ Doppler | | | |
| ☐ Normal | | | |

**GENITAL/RECTAL:** ☒ NL Genital
☑ NL Rectal ☐ Heme neg. stool
☐ Peritoneal hematoma
☐ Blood at the urethral meatus
Rectal tone: ☒ NL ☐ Absent
Sacral sensor: ☐ Decreased ☐ Absent
Date of Last Menstrual Period ______
Date of Last Mammogram ______
Date of Last pap smear ______
**Cranial Nerves:** (2 to 12)
☑ Normal
☑ Abnormal loc sensation on (R) side face
**Peripheral sensori-motor**
☑ No motor deficits
☐ No sensory deficits
☐ Hemiparesis/hemiplegia
☐ Rt ☐ Lt
☐ Pronator drift: ☐ RUE ☐ LUE
Pulses

2+ 2+ 2+ 2+ 2+ 2+ 2+ 2+

## GLASGOW TRAUMA SCORE (CIRCLE)

| Eye Opening | | Verbal | | Motor | |
|---|---|---|---|---|---|
| Spontaneous | (4) | Normal conversation | (5) | Normal | (6) |
| To Voice | 3 | Disoriented conversation | 4 | Localized to pain | 5 |
| To Pain | 2 | Words, but not coherent | 3 | Withdraws to pain | 4 |
| None | 1 | No words, only sounds | 2 | Decorticate | 3 |
| | | None | 1 | Decerebrate | 2 |
| | | | | None | 1 |
| | | | | TOTAL | 15 |

MOUNT SINAI HOSPITAL
California and 15th. Street
CHICAGO, IL 60608
MEDICAL RECORDS DEPARTMENT 773-257-6706
DISCHARGE SUMMARY

**************************************************************************************************

PATIENT NAME: MICHAEL OCONNER
ADMIT DATE: 05/09/14
ACCT #: 000151349313
D/C DATE: 05/12/14

MEDICAL RECORD NUMBER: 003173193
ATTENDING DR: Vafa,Amir MD
LOCATION: N02
REF/LOC:

**************************************************************************************************

bipolar disorder and suicidal ideation. The patient denied suicidal ideation throughout his hospital stay. Psychiatric medications were adjusted; Olanzapine dosing was consolidated from 5 mg every morning and 10 mg every evening to 15 mg every afternoon. Depakote dosing was increased from 100 mg every morning and 150 mg every evening to 500 mg twice daily. Prazosin was added for posttraumatic stress disorder symptoms but was discontinued due to effects on blood pressure. The patient reported increased anxiety during his stay at several points. Valium 2 mg every eight hours as needed for anxiety was instituted with good results. On the morning of May 12, 2014, patient was medically cleared and able to be discharged to the Cermak Psychiatric Facility.

DISCHARGE DISPOSITION:
Cermak Psychiatric Service.

DISCHARGE MEDICATIONS:
Norco 5/325 mg p.r.n. for pain, olanzapine 15 mg every afternoon, Depakote 500 mg twice daily, Valium 2 mg every eight hours as needed for anxiety.

DISCHARGE DIET:
Regular diet.

DISCHARGE INSTRUCTIONS:
Patient instructed to follow up with plastic surgery clinic regarding nasal bone fractures as needed.

PLAN:
Patient discharged in custody to police to Cermak Psychiatric Service.

DICTATED BY: Mark Postel, MD(R)

Trauma Surgery Progress Note
Mt Sinai Hospital

**Patient Name:** MICHAEL OCONNER
**MR #:** 003173193
**Date of Birth:** 06/18/90
05/12/14
**Admit Date:** 05/09/14

**Acct #:** 000151349313
**Room#:** N211-01
**Service Date:**

**Service Time:** 0729

****See Addendum****

**Surgery Progress Note-O**
**Time of patient visit:** 0729
**Subjective**
Patient states that he is doing well today. No complaints overnight. Some nausea but no vomiting. States that he has pain still in his ribs and back. No evidence of pressured speech or mania currently.

**Vitals**
Vital Signs

| Date | Temp | Pulse | Resp | B/P | Pulse Ox | FiO2 |
|---|---|---|---|---|---|---|
| 05/11 | 97.7-98.4 | 46-68 | 15-17 | 92-119/57 CL-66 | 97-98 | |

**Physical Exam**
Consitutional: well-appearing male, pleasant, asleep in bed but arousable, NAD.
HEENT: ecchymoses under both eyes, EOMI, PERRL, oropharynx clear
Respiratory: CTAB, no wheezes or rhonchi
Cardiovasular: RRR, normal S1/S2, no murmurs
Chest (breast): non tender to palpation
Gastrointestinal: soft, nontender, nondistended, + bowel sounds
Neurologic: no focal deficits
Mental Status: A/O x 3

**LABS-Last**
Laboratory Tests

**05/11/14 0557:**
Bedside Glucose 112

**05/11/14 0446:**

140 | 107 | 13
4.1 | 28 | 1.09
97

Anion Gap 5, Glomerular Filtration Rate Calc > 60, BUN/Creatinine Ratio 12, Total Calcium 8.5, Total Bilirubin 0.3, Aspartate Amino Transf (AST/SGOT) 24, Alanine Aminotransferase (ALT/SGPT) 34, Alkaline Phosphatase 47, Serum Total Protein 5.7, Albumin 3.4, Albumin/Globulin Ratio 1.5, Thyroid Stimulating

Run: 05/14/14-12:13 by Torres,Kimberly

Additional copy

Trauma Surgery Progress Note
Mt Sinai Hospital

**Patient Name:** MICHAEL OCONNER
**MR #:** 003173193
**Date of Birth:** 06/18/90
05/11/14
**Admit Date:** 05/09/14

**Acct #:** 000151349313
**Room#:** N211-01
**Service Date:**

**Service Time:** 0747

Blunt trauma
- CT head, abd/pelvis, CXR, clear
- c-collar cleared
- CT facial bones with equivocal non-displaced nasal bone fracture
- f/u PT/OT recs

SI, resolved as of this am per pt
- 1:1 sitter
- appreciate SW recs
will con't psych recs
cont Zyprexa 15mg qpm,
cont Depakote 500mg bid,
Cont Valium, change the dose to 2mg q8hrs prn.
Add Prazosin 1mg now once and 2mg qhs, hold if BP <100/60 - given to address PTSD sx

FEN
- reg diet

Dispo
- tx to Cermak ; to police custody

Kelvin Adjei-Twum, PGY-1
Trauma Service , x16446

**ADDENDUM: Vafa MD,Amir on 05/12/14 at 1427**

## Addendum

•

I have personally examined the patient and reviewed the resident's history and physical assessment and plan. I agree or disagree as noted...

patient doing well, awaiting psych recs then transfer to police custody for transfer to psych unit of cermak

****************************************************************************************

**Transcribed Date/Time**
05/11/14 0747
**Entered/Signed by Provider:**
**Date/Time**
RD Electronic Signature by Adjei-Twum,Kelvin MD
05/11/14 1155
AT Electronic Signature by Vafa,Amir MD
5/12/14 1427
511-0070

Attachment
XIV
DOC
XXL

If I could have one dream come true, I'd want to spend the rest of my life with you.
If I could have only one voice to hear, one smile to see, one hand to hold... I'd want yours. In a world with people, there's a comfort only your caring for me can provide, a quiet calm at the center of the universe only you can give. There's a deep abiding happiness my heart ~~[illegible]~~ never ~~[illegible]~~ knew till I found you. If I could make a difference in one life, I'd want it to be yours.

Page 1

05/14/14

[redacted] (the most beautiful name and girl to me),

In the past few months I have seen a bright future for each of us, surreal (REAL) visions (sightings) of you coming to the past to inform me you do indeed love me, touching my arm like in our dream, and that we do indeed have a bright future together. Instances like these are infrequent and quite rare. Although you admitted we somewhat share a bright future as lovers whether or not we were dating or married remains a mystery to me; all I know is that we are both married (not sure if it is to each other.)

Regardless of our fates, and the grim look of my fate at the moment, (surrounded by killers and thieves), I do in all reality believe in a bright Future for us both as we are the brightest of our generation, (of this I am sure). [that fact is why I chose you]. Also, in regards to the grim outlook regarding my fate at the moment (my third felony), I do pray that this letter reaches your heart and [redacted] according to one of my fortune cookies last year or so; "a positive, swift, and/or upright action in time can 'Counteract' fate..." Through this letter I likewise aim to counteract my grim fate through honor, love, and my word as a man, Patrycja.

As previously noted I acknowledge a bright future for both of us, I can assure you I would never hurt you or any body [illegible] care about, I can put this on